SOUTH SIDE ROOFING & MATERIAL COMPANY and another, Appellants, vs. INDUSTRIAL COMMISSION and others, Respondents.

*February 20—March 29, 1948.*

405

406

For the appellants there were briefs by *Shaw, Muskat & Paulsen,* and oral argument by *Van B. Wake,* all of Milwaukee.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

FAIRCHILD, J.    The respondent Armbruster, upon this last claim, insists upon the existence of a bodily condition of weakness allegedly resulting from injuries occurring during his employment by three successive employers.    The Industrial Commission, in passing upon the claim, decided that it was proper to divide the liability and apportion it in equal degrees among the three employers.    The employers were successive, and there was a considerable period of time between employments.    Lacking jurisdiction to make an award against the first employer because of the lapse of time and a former decision, the commission could not place a burden there of one third, but did make an award assessing one third on the second and third employers.

This effort to sum up the loss and levy compensation in equal proportions upon several distinct and successive employers cannot be supported.

The Workmen's Compensation Law considers the existence of a status, that is, of employer-employee, and affixes certain obligations upon the employer because of that status. Those obligations are to be determined under the statute. The employer is bound to respond in workmen's compensation for whatever injury an employee sustains during the course of his employ with that employer.    Sec. 102.03 (1), Stats. 1945.    The purpose is to fix the liability on the particular employment where it belongs.    The statutes and decisions in the consideration of cases involving occupational disease, for instance, make it clear that the employer for whom the em-

ployee works at the time of the onset of a disability is liable. Sec. 102.18 (5), provides:

"If it shall appear to the commission on due hearing that a mistake has been made in an award of compensation for an injury when in fact the employee was suffering from an occupational disease, the commission may within three years, set aside such award, and make a new award under this section."

In *Zurich Gen. Acc. & L. Ins. Co. v. Industrial Comm.* (1930), 203 Wis. 135, 146, 233 N. W. 772, the court said,

"Upon a full reconsideration of the entire matter, it is considered that it should be held that the 'time of accident' within the meaning of the statute in occupational disease cases should be the time when disability first occurs; that the employer in whose employment the injured workman is and the insurance carrier at that time are liable for the total consequences due thereto. So that if the end result, whatever it may be, is inevitably due to exposure already complete, that employer and that carrier become liable accordingly. . . . If . . . there is no subsequent exposure which contributes to the disability and the disability is a recurrence of the former occupational disease, then the employer in whose employment the employee is when the recurrence takes place is not liable and so the insurance carrier upon the risk at that time is not liable on that account."

This is not a case involving an occupational disease, but it is contended that similar reasoning should apply. The claimant here was not an employee of anyone during the period for which he seeks compensation. He claims, however, that his disabilities were caused by the previous injuries. In *Western Lime & C. Co. v. Industrial Comm.* (1928) 194 Wis. 606, 608, 217 N. W. 303, the rule is stated thus:

"There must be a showing made by the claimant, in order to sustain an award for such a subsequent injury, that it can be traced back to, and have some causal connection with, the first injury occurring while in the immediate service of the employer." See *Employers Mut. L. Ins. Co. v. Industrial Comm.* (1933) 212 Wis. 669, 672, 250 N. W. 758; *Ameri-*

*can Rolling Mill Co. v. Stevens* (1941), 290 Ky. 16, 160 S. W. (2d) 355.

At different times three injuries for which Armbruster made claims were considered by the Industrial Commission. At none of those times was there any attempt to determine any per cent of partial permanent disability. Had it been concluded that while working for the Berlin Chapman Company he sustained a partial permanent disability, that much, of course, would fall upon that employer. *Employers Mut. L. Ins. Co. v. Industrial Comm., supra.* If it had been found at the time of his injury while working for LaVariere that that second injury caused or contributed further to a partial permanent disability, then, of course, LaVariere would be accordingly liable for Armbruster's increased disabilities due to that employment. See sec. 102.59 (1), Stats. 1945. So also in the case of the employment with the South Side Roofing & Material Company. But, as we have noted, no partial permanent injury was found by the commission at any of the times that claims by Armbruster were before the commission. No new evidence has been introduced at this time to warrant the conclusion that each injury did in fact contribute to a partial permanent injury or disability, a condition which was not apparent at the times of the injuries. To justify assessing either employer here sought to be charged with one third of the compensation which Armbruster's alleged disability is considered to merit, the commission ought to have found upon competent evidence that the only causes of his present disability were those three injuries and that each was equal in causal effect to each of the others. No such finding was made, nor could it be supported by the evidence. The commission is not vested with power to award compensation as it may think it ought to be awarded, nor is it permitted in selecting a method of distributing a burden, to resort to its ideas of what would be charitable or equitable, regardless of the degree of causation. The rule established by law requires the com-

mission "to proceed upon the basis of certain established standards." *Welhouse v. Industrial Comm.* (1934) 214 Wis. 163, 165, 252 N. W. 717.

In 1941, the commission considered a second claim alleged to have arisen out of the first injury at the Berlin Chapman Company on April 12, 1940. In that second claim Armbruster sought to show that his injuries had been more extensive than it had been thought when he was awarded $26.26 at the time of the injury the year before. At the hearing in 1941, the report of Dr. Robert P. Montgomery was received in evidence. He reported that he believed the injury of 1940 in no way permanently altered Armbruster's structurally weak back; that Armbruster's complaints were entirely of the basis of a chronic postural back strain secondary to structural defects in the spine and congenital shortening in the right lower extremity; and that Armbruster was likely to continue to have pain in the lower part of his back when the demands on the back were heavy. Dr. Montgomery had taken X rays of Armbruster which showed the left side of the pelvis was elevated an estimated one half to three quarters of an inch, that there was a right lower dorsal, upper lumbar scoliosis, and that the lumbosacral articular facets were asymmetrical. There was no evidence of bone or joint disease or trauma in any of the X rays.

Dr. L. J. Seward, who had attended Armbruster, testified at the 1941 hearing that he agreed essentially with Dr. Montgomery's report. He did, however, express an opinion, based on the history given by Armbruster of his having done heavy work all his life, that the injury Armbruster had in 1940 must have been the cause of the trouble. He said further, "I have to take his word for the pain." ·

Considering this medical testimony and the claimant's own testimony, the commission in 1941 determined "that the applicant suffered no permanent disability because of the injury

in the course of his employment on April 12, 1940; that any pain or distress that the applicant now suffers in his back is due to a congenital condition which was not caused or affected in any way by the injury." Accordingly, his application for further compensation was dismissed.

There is a lack of substantial evidence on which to base a finding that his condition differs from that which existed when he came before the commission in 1940 and 1941. He has since suffered two more temporary compensable injuries involving his back, one when working for LaVariere in 1944 and one when working for the South Side Roofing & Material Company in 1945, but a reference to the facts set forth above compels the conclusion that the only injury disclosed by the evidence in either case was a temporary strain, for which compensation has been made. These strains are likely to occur due to the condition of his back and the nature of the work he did. Dr. Yaffe, who had examined Armbruster after his third injury, testified that the trouble Armbruster had had off and on ever since 1940 amounted to intermittent remissions, to be expected in a case of a chronic back. He believed that each injury was an aggravation of symptoms that Armbruster had had continuously since 1940.

Besides the three employments referred to, Armbruster since 1940 has worked for himself in chopping wood and doing some building. He has served in the army, being inducted after a physical examination. He appears to have complained considerably about back strain then, although no objective findings seem to exist. He had similar trouble with his back while an employee of one Rozman, whose employ he left because, as he said, he did not want to involve him in a workmen's compensation claim. Evidently during the years since 1940 remissions have occurred when he has subjected his back to considerable strain and have disappeared upon his resting thereafter. The conclusion necessarily is that no permanent

injury resulted from the several employments. As described by the doctors and confirmed by answers to questions made by the claimant himself, his back condition is chronic.

This state of facts leaves the record without substantial bases on which to find that Armbruster's disability in 1946 was different from that which existed as far back as 1941 and before his employment by either LaVariere or the appellant here. On the evidence it not only could as well be concluded that claimant's present disability arose from other sources than the injuries for which he here seeks compensation, but the testimony is to that effect. It might be urged that the first injury was the cause of all the trouble. Or it might be urged that other periods of heavy work contributed as much or more to the present disability than the claimed injuries did. But the congenital condition of the back has been present at all times. Evidently conjecture and speculation were resorted to in reaching the conclusion on which the award was made. Under the circumstances presented by this record there is nothing to warrant dividing liability for the disability equally among the three successive employers and making W. J. LaVariere d/b/a L & S Roofing Company and the appellants here chargeable with one third of the compensation awarded. We conclude that the findings of the commission are unsupported by the evidence. *F. A. McDonald Co. v. Industrial Comm.* 250 Wis. 134, 26 N. W. (2d) 165.

*By the Court.*—Judgment of the circuit court reversed, with directions to enter an order vacating the interlocutory award. Record remanded for further proceedings.