19 Wis.2d 11 (1963)
GREEN BAY WAREHOUSE OPERATORS, INC., and another, Appellants,
v.
INDUSTRIAL COMMISSION and another, Respondents.
Supreme Court of Wisconsin.
January 8, 1963.
February 5, 1963.
*12 For the appellants there were briefs by Kaftan, Kaftan & Kaftan of Green Bay, and oral argument by Fred F. Kaftan.
For the respondent Industrial Commission the cause was argued by John H. Bowers, assistant attorney general, with whom on the brief was John W. Reynolds, attorney general.
DIETERICH, J.
Sconzert injured his shoulder during the course of his employment on March 30, 1960, when he attempted to shut a railroad car door. He was hospitalized for *13 two days, released, and then returned to the hospital on April 6, 1960, for a shoulder operation. His left shoulder was originally dislocated in August of 1955, as a result of an automobile accident. About one year after the accident he experienced a momentary dislocation which did not require medical attention.
In September, 1959, Sconzert again dislocated his left shoulder when a rung on a ladder he was climbing, at his home, broke. He was out of work for three weeks. Except for this incident Sconzert has been able to work at his job regularly since he returned to work less than a year after his automobile accident.
". . . an employer takes an employee `as is' and the fact that he may be susceptible to injury by reason of a pre-existing physical condition does not relieve the last employer from being held liable for workmen's compensation benefits if the employee becomes injured due to his employment, even though the injury may not have been such as to have caused disability in a normal individual." M. & M. Realty Co. v. Industrial Comm. (1954), 267 Wis. 52, 63, 64 N. W. (2d) 413.
Plaintiffs concede that Sconzert had a compensable injury and do not argue with the "as is" rule. Their position is that they should be held to compensate Sconzert only for such medical care as was necessary to put Sconzert in the same condition after the injury of March 30th, as he was before that injury. Plaintiffs contend that the operation of April 6th, corrected the pre-existing condition of susceptibility of shoulder dislocation and was not necessary to correct the disability Sconzert sustained as a result of the March 30th injury.
The record contains the A-16 (b) medical reports (forms required by the Industrial Commission) of the only two physicians connected with this action, Dr. J. W. Nellen and Dr. R. J. Rose. Under the provisions of sec. 102.17 (1) *14 (as), Stats.,[1] and 3 Wis. Adm. Code, sec. Ind 80.22, these reports are admitted as evidence in this type of action. The only doctor to appear personally at the hearing conducted by the examiner of the Industrial Commission was Dr. Nellen and he was cross-examined on the basis of his A-16 (b) medical report.
Under these circumstances plaintiffs conclude that the question of whether Sconzert's injury was compensable is one of law. They are in error. A question of fact was presented under the rule stated in Eckhardt v. Industrial Comm. (1943), 242 Wis. 325, 329, 7 N. W. (2d) 841, to wit:
"The claimant argues that a question of law and not of fact is presented because there is no conflict in the evidence. It is true that the witnesses do not contradict each other but that fact does not support claimant's position. Where undisputed facts permit of different inferences a question of fact and not of law is presented. Tiffany v. Industrial Comm. (1937), 225 Wis. 187, 273 N. W. 519. See also Scandrett v. Industrial Comm. (1940), 235 Wis. 1, 291 N. W. 845; Voll v. Industrial Comm. (1941), 239 Wis. 71, 300 N. W. 772. In this connection, the rule laid down in Weyauwega v. Industrial Comm. (1923), 180 Wis. 168, 192 N. W. 452, is applicable. If when a rule of law is applied to undisputed facts, a final conclusion results, the question presented is one of law. If something more than the application of a rule of law is required in order to reach a final conclusion, a question of fact is presented."
*15 The issue presented on this appeal is whether there is any credible evidence to sustain the commission's finding that it was the injury of March 30, 1960, and not the pre-existing condition of susceptibility to shoulder dislocations which required that Sconzert have surgery on his left shoulder.
Dr. Nellen's testimony supports the findings of the commission, to wit:
Cross-examination by counsel for plaintiffs: "Q. So then assuming, Doctor, that in 1959, he did have a dislocation to that shoulder joint, would it be your opinion that then he needed the operation or should have had the operation? A. No, you don't say when there is there dislocations then we operate. We don't do it that way. We just say that when the dislocations become so a person is incapacitated for his work, then surgery is necessary. Now, it might be three dislocations or it might be a hundred dislocations. . . ."
The examiner: ". . . I think your question is other than for the episode, of March 30, 1960, the operation would not have been performed; is that right?"
Counsel for applicant: "Q. Yes. It is quite possible this man might have continued working for a number of years if this accident hadn't happened? A. Obviously if he hadn't had the dislocation on March 30th, obviously we wouldn't have operated on him on April 6th. We wouldn't have picked him off the street and said, `Let's operate on your shoulder.' I cannot, by any stretch of the imagination, say what would have happened if he had not had the dislocation on March 30th, because I don't know. He could have had it dislocated on March 31st, by something that happened, or he could have gone on for months or weeks or years without a dislocation."
Re-cross-examination by counsel for plaintiffs: "Q. . . . As I understand this thing, the importance of the incident of March 30th was that it was another dislocation which indicated that his shoulder was susceptible to dislocations in the future and convinced you that it should be stabilized so as to stop these dislocations? A. Yes, that dislocation was what made Dr. Rose call me to have it fixed.
*16 "Q. So that dislocation was what convinced you?A. Yes. . . .
"Q. And that along with the fact he had had others and they were recurrent? A. Certainly he had to have others before that.
"Q. If there had been only one dislocation five years after the original accident, you wouldn't have been convinced he needed an operation by reason of one? A. No, I would wait to see what happened.
"Q. It is a fact he had had recurrent dislocations in that same shoulder that brought about the conclusion it should be stabilized? A. That's right."
Dr. Nellen's A-16 (b) medical report estimated permanent disability at five percent.
Dr. Rose's A-16 (b) medical report stated the following:
"10. If accidental, in your opinion did the accident cause the disability sustained? Yes. . . .
"13. Has accident or industrial disease result in any permanent disability? Yes.
"14. If so, what percentage of disability to the member or organ involved; or to the entire body if injury is to torso or head? Left shoulder range of abduction limited to 165 degreesloss of 15 percent of abductionor three percent as compared to amputation at the shoulder as compared to amputation.
"15. What elements constitute disability? Limitation of motionweakness of left shoulder. . . .
"17. If limitation of motion, describe nature and percentage . . .? Loss of 15 percent of motion at left shoulder joint.
"18. Previous to this injury, did employee have any permanent disability? No.
"19. What improvement, if any, is anticipated? None.
"20. What, if any, further treatment should be given? None."
The Industrial Commission found that Sconzert sustained a permanent partial disability of five percent loss of the use of his left shoulder.
*17 As stated by the trial court in the instant action:
"The determination of extent or duration of disability presents a question of fact, and not of law, and such findings of fact are conclusive upon this court if supported by any credible evidence. Rico v. Industrial Comm. (1960), 9 Wis. (2d) 382, 101 N. W. (2d) 99."
The rule is that this court will affirm a finding of fact of the commission, unless such finding is clearly against all the credible testimony or so inherently unreasonable as not to be entitled to any weight. Van Valin v. Industrial Comm. (1962), 15 Wis. (2d) 362, 112 N. W. (2d) 920; Fitz v. Industrial Comm. (1960), 10 Wis. (2d) 202, 102 N. W. (2d) 93; and Tuohy v. Industrial Comm. (1958), 5 Wis. (2d) 576, 93 N. W. (2d) 344.
On the basis of this record there is credible evidence to support the commission's findings.
By the Court.Judgment affirmed.
NOTES
[1] Sec. 102.17 (1) (as). "The contents of verified medical and surgical reports, by physicians and surgeons licensed in and practicing in Wisconsin, presented by claimants for compensation shall constitute prima facie evidence as to the matter contained therein, subject to such rules and such limitations as the commission prescribes. So, also, shall such reports of physicians and surgeons, wherever licensed and practicing, to whom the claimant had been sent for examination or treatment by the employer or insurer, provided that such doctor consents to subject himself to cross-examination."