SEMONS DEPARTMENT STORE and another, Appellants,
v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RE-
LATIONS and others, Respondents.

*No. 244.  Argued March 1, 1971.—Decided March 30, 1971.*
(Also reported in 184 N. W. 2d 871.)

520

For the appellants there was a brief by *Kivett & Kasdorf*, attorneys, and *Clifford C. Kasdorf* and *James R. Gass* of counsel, all of Milwaukee, and oral argument by *Mr. Clifford C. Kasdorf* and *Mr. Gass*.

For the respondent Department of Industry, Labor & Human Relations the cause was argued by *James P. Altman*, assistant attorney general, with whom on the brief was *Robert W. Warren*, attorney general.

For the respondent The Great Atlantic & Pacific Tea Company there was a brief by *Brady, Tyrrell, Cotter & Cutler*, attorneys, and *Peter W. Bunde* and *Thomas W. O'Brien* of counsel, all of Milwaukee, and oral argument by *Mr. O'Brien*.

CONNOR T. HANSEN, J. The employee, Romayne Staffin, is not a party to this appeal. The litigation is really between Semons Department Store (Semons) and its workmen's compensation carrier, Iowa National Mutual Insurance Company, and The Great Atlantic & Pacific Tea Company (A & P), a former employer.

The ILHR Department found the compensable injury occurred while the applicant was an employee of Semons. Essentially, Semons takes the position the injury occurred while the applicant was an employee of A & P.

As we view the case, it presents two issues on appeal:

(1) Was there credible evidence to sustain the department's finding that the applicant suffered an accident resulting in an injury on September 30, 1967?

(2) Was there credible evidence to sustain the department's finding that the September 30, 1967, injury required the applicant to have surgery on her left shoulder, resulting in a permanent partial disability?

Mrs. Staffin suffered a dislocation of her left arm at the shoulder on September 30, 1967, during the course of her employment at Semons. She had suffered a dislocation of her left shoulder on two prior occasions. In April of 1951, Mrs. Staffin fell while descending a flight of stairs. She dislocated her left arm at the shoulder when she grabbed for a railing to break her fall. The dislocation was reduced and Mrs. Staffin experienced no difficulty with her arm for a period of approximately twelve years thereafter. She began working for A & P in the fall of 1962. On February 16, 1963, she slipped on a wet floor during the course of her employment and again dislocated her left arm at the shoulder when she reached for a counter to break her fall. She was again treated by a closed reduction of the shoulder. Following the incident, she resumed her job at A & P, but her shoulder bothered her when she lifted heavy bags of groceries. She also experienced some difficulty with her shoulder in her daily activities after the 1963 dislocation. She could feel her shoulder start to slip when she attempted to reach for something from a cupboard or to hang up sheets. She had to discontinue swimming because her shoulder would start to slip.

She began working for Semons in the fall of 1963 as a stocker and clerk. The September 30, 1967, incident occurred when she attempted to remove a box of men's shirts from a shelf seven feet high. Semons and its compensation carrier, Iowa National Mutual Insurance Company, denied liability. A hearing was held before an examiner on the claim of Mrs. Staffin against both Semons and A & P. The examiner found that the applicant's shoulder was dislocated as a result of the incident occurring at work on September 30, 1967, necessitating reduction of the dislocation and surgery to prevent further dislocations.

The examiner found that the applicant suffered a temporary total disability from September 30, 1967, to

June 3, 1968, and a permanent partial disability of ten percent as a direct result of the 1967 injury and the subsequent surgery.

The examiner found that Mrs. Staffin sustained no permanent disability as a result of the 1963 incident and that she had been paid the full temporary total disability benefits due her for that injury. Semons and its carrier were ordered to pay certain hospital and medical expenses and to pay the applicant certain sums as compensation for the temporary total disability and the permanent partial disability found to have resulted from the 1967 incident.

The findings and order of the examiner were reviewed by the ILHR Department as a body and affirmed by an order dated June 30, 1969.

### Cause of injury.

Appellants contend that the applicant did not sustain an accidental injury. An "accident" under the Workmen's Compensation Act is a fortuitous event, unexpected and unforeseen by the injured person. *Beck v. Hamann* (1953), 263 Wis. 131, 56 N. W. 2d 837. An accidental injury is one that results from a definite mishap. *Andrzeczak v. Industrial Comm.* (1945), 248 Wis. 12, 20 N. W. 2d 551.

Mrs. Staffin testified at the hearing that she suffered the injury when she reached for a box on a shelf seven or eight feet off of the floor. She stated she could not reach the box and attempted to get it by jumping up and grabbing for it; the top of the box was wedged in the shelf, her hand slipped and she fell backward, and struck her shoulder on the shelf behind her. She stated she felt pain immediately when her shoulder struck the shelf. Her treating physician made an entry in her hospital record that the applicant's shoulder dislocated when she lifted her arm above her head. According to a statement given by Mrs. Staffin to a representative for Semons'

compensation carrier, the incident occurred when she was trying to reach the box on the shelf by standing on her tiptoes; she reached with her right arm and had her left arm on a shelf above the level of her shoulder; after pulling the box out a short way she came down on her heels, and as she came down on her heels she went forward to grab with her left arm, causing it to become dislocated at the shoulder.

The findings of the examiner are based upon the applicant's testimony at the hearing, and are as follows:

"That on September 30, 1967, the applicant was employed at the Semons Department Store; that on said date she went to her employer's storeroom and attempted to remove a box of shirts from a high shelf; that applicant could not reach said shirts, and attempted to get them by jumping up and grabbing for said box; that applicant was unsuccessful in her attempt to grab said box of shirts, and that as she came down to the floor she fell backwards and hit her left shoulder on a shelf behind her; that as a result of said incident, applicant again dislocated her left shoulder; . . ."

Appellants argue that the injury occurred when the applicant simply reached up with her arm, and that in light of her prior difficulties in reaching, the dislocation was not fortuitous or unexpected. The problem with the appellants' argument is that this is not how the examiner found the accident occurred, and there is credible evidence to support the findings.

"The question is not whether there is credible evidence in the record to sustain a finding the commission did not make, but whether there is any credible evidence to sustain the finding the commission did make." *Unruh v. Industrial Comm.* (1959), 8 Wis. 2d 394, 398, 99 N. W. 2d 182.

The applicant has the burden of proving her case by credible evidence such that the finding of the department will rest on that evidence. *R. T. Madden, Inc. v. ILHR Department* (1969), 43 Wis. 2d 528, 169 N. W. 2d 73. It is the duty of the department to deny compensation

where the evidence is sufficient to raise a legitimate doubt as to the facts necessary to support the claim. *Reich v. ILHR Department* (1968), 40 Wis. 2d 244, 161 N. W. 2d 878. This court, on review, has the duty to view the evidence relied upon by the department to determine whether that evidence is sufficient to justify the finding made by the department. If there is credible evidence, which when construed most favorably to the finding made by the department, would justify men of ordinary reason and fairness in making that finding, the evidence is sufficient to support the findings of the department. *R. T. Madden, Inc. v. ILHR Department, supra.*

The examiner in this case found that the injury was the result of a mishap, and his findings are supported by credible evidence.

*Permanent partial disability.*

Appellants argue that the 1963 incident which occurred while applicant was working for A & P, resulted in a permanent partial disability to the applicant's left shoulder and that an award for compensable disability should have been made against A & P.

This court has held that a workmen's compensation applicant should not be compensated for a pre-existing disability where the pre-existing disability can be separated from the effects of the later accidental injury. *Employers Mut. Liability Ins. Co. v. Industrial Comm.* (1933), 212 Wis. 669, 250 N. W. 758; *Mednis v. Industrial Comm.* (1965), 27 Wis. 2d 439, 134 N. W. 2d 416. However, the department cannot divide liability for compensation among successive employers for the effects of successive injuries in the absence of evidence to sustain a finding that the disability arose from successive injuries. *South Side Roofing & Material Co. v. Industrial*

*Comm.* (1948), 252 Wis. 403, 31 N. W. 2d 577. The department can neither assess all the liability against one of several employers nor divide liability equally among each of several employers where there is no evidence in the record to support a finding that the injury or injuries contributed to the disability in that manner. *Merton Lumber Co. v. Industrial Comm.* (1951), 260 Wis. 109, 50 N. W. 2d 42.

In this case the department found that only one of the injuries, that one which occurred in 1967 while the applicant was employed at Semons, caused the permanent disability. Thus, the issue in this case is whether there is credible evidence to sustain the finding of the department that the 10 percent permanent disability was a result of the 1967 incident, and that the applicant suffered no permanent disability as a result of the 1963 incident.

Dr. C. Hugh Hickey treated the applicant following the 1963 injury (A & P injury). He performed a closed reduction. Although surgery was not required at that time, Dr. Hickey cautioned the applicant that surgery would be necessary should her shoulder again become dislocated. The applicant was released to return to work five weeks after the injury occurred. At that time, Dr. Hickey submitted a WC–16b form in which he stated there was no permanent disability as a result of the injury. He did not see the applicant after March 8, 1963. In a letter dated November 28, 1968, written by Dr. Hickey to the attorney for the respondent, A & P, he stated that the 1963 dislocation was not responsible for any part of the permanent partial disability she now had as a result of the surgery. In that letter he also stated that he had found no permanent partial disability as a result of the 1963 incident and that the 1963 incident was not a cause for any of the present partial disability. However, in a letter written by Dr. Hickey to the attorney for the appellants, dated December 2,

1968, he stated that his original opinion was wrong and that the applicant did have a permanent partial disability following the 1963 incident. He did not, however, change his original opinion that the 1963 incident was not responsible for any part of the permanent partial disability that the applicant had as a result of the surgery.

At the hearing, Dr. Hickey testified that he had not seen the applicant since March 8, 1963. He stated that at the time of his opinion on November 28, 1968, he was not aware that the applicant had had any subsequent difficulties with her shoulder. In response to a hypothetical question, he testified that on the basis of the applicant's history as related to him, it was his opinion that the applicant suffered a permanent partial disability of 15 percent as a result of the 1963 injury. On cross-examination, he stated that his assessment of the disability was for the period prior to the 1967 surgery and was not applicable to her present disability. He also stated that his estimation of the permanent disability prior to 1967 was not based on either a physical examination of the applicant, examination of the range of motion of her shoulder, or a history as related to him by the applicant. He stated that his opinion as to the estimated pre-1967 disability was not an opinion upon which things of great importance should be based.

Dr. William P. McDevitt treated the applicant following the 1967 injury (Semons injury). He reduced the dislocation shortly after it occurred and later performed surgery to prevent further dislocations. He stated that the surgery would not have been necessary had the 1967 injury not occurred. He testified that the applicant suffered a limitation of motion as a result of the surgery; the limitation of motion was due to the surgery and the period of immobilization following the surgery. He estimated the permanent partial disability at 10 percent. The disability was based on the limitation of motion of

the shoulder, which was the result of the surgery and the period of immobilization. He was unable to form an opinion as to whether the applicant had suffered any permanent partial disability as a result of the 1963 injury.

Dr. Elliot L. Coles, who examined the applicant on July 23, 1968, testified that the applicant had a present permanent partial disability, but that he had not estimated a percentage. He testified that the disability was due to a number of factors dating back to the 1963 dislocation. He affirmed an opinion previously written to the appellants' attorneys that the 1963 incident was a cause of the 1967 dislocation and that the major responsibility for the case rested with A & P where the major accident took place. Dr. Coles, however, had not examined the applicant prior to July 23, 1968.

In this case there was credible evidence to support the finding of the department that the 1967 accident was responsible for the applicant's subsequent surgery and resulted in a 10 percent permanent partial disability. Although there is some dispute as to whether the applicant suffered a permanent disability as a result of the 1963 incident, it is undisputed that the 1963 incident did not require surgery. As a result of that incident, her shoulder became unstable and had a tendency to redislocate. However, susceptibility to further injury does not necessarily establish a permanent disability. As this court stated in *M. & M. Realty Co. v. Industrial Comm.* (1954), 267 Wis. 52, 65, 64 N. W. 2d 413:

"The fact, that a former injury may have produced a weakness in the employee's body making him more susceptible to further injury than would a normal individual, does not necessarily in itself establish a partial permanent disability of a compensable nature. Such employee might never sustain a further injury, in which case he never will be disabled."

Furthermore, an employee's predisposition to injury does not relieve the present employer from liability for workmen's compensation. In *Green Bay Warehouse Operators, Inc. v. Industrial Comm.* (1963), 19 Wis. 2d 11, 119 N. W. 2d 435, this court rejected a contention that a pre-existing tendency to instability of the shoulder joint, with a tendency to dislocate, relieved the employer of the consequence of liability for medical payments. The court quoted the following from *M. & M. Realty Co. v. Industrial Comm., supra,* page 63:

". . . . [A]n employer takes an employee 'as is' and the fact that he may be susceptible to injury by reason of a pre-existing physical condition does not relieve the last employer from being held liable for workmen's compensation benefits if the employee becomes injured due to his employment, even though the injury may not have been such as to have caused disability in a normal individual. . . ."

The 1967 incident necessitated the surgery. Although there was testimony given by Dr. Coles that other factors, dating back to the 1963 incident, contributed to the disability, it was not specific as to the factors that contributed to the disability or as to the manner or amount of contribution. Dr. McDevitt testified that it was the limitation of motion caused by the surgery which caused the 10 percent disability. The department was justified in rejecting the testimony of Dr. Coles and accepting the testimony of Dr. McDevitt as to the cause of the disability.

In evaluating medical testimony, the department is the sole judge of the weight and credibility of the witnesses. *Carr v. Industrial Comm.* (1964), 25 Wis. 2d 536, 131 N. W. 2d 328. In *Rico v. Industrial Comm.* (1960), 9 Wis. 2d 382, 385, 101 N. W. 2d 99, this court stated:

" 'It is a well-established rule that the commission's finding on disputed medical testimony is conclusive. . . .'

"As we have said so often, the evaluation of the testimony of the medical experts lies with the Industrial Commission. . . ."

*By the Court.*—Judgment affirmed.