GREEN BAY SOAP COMPANY, and another, Plaintiffs-Appellants, v. DEPARTMENT OF INDUSTRY, LABOR AND HUMAN RELATIONS, and others, Defendants-Respondents.

Court of Appeals

*No. 77–783. Argued October 25, 1978.—
Decided January 12, 1979.*
(Also reported in 275 N.W.2d 190.)

For the plaintiffs-appellants there was a brief by *Shannon D. Mahoney* and *Michael J. Kranzush,* of *Denissen, Kranzush, Mahoney & Ewald, S.C.,* Green Bay, and oral argument by *Shannon D. Mahoney.*

For the defendants-respondents there was a brief by *Bronson C. La Follette,* attorney general and *Stephen M. Sobota,* assistant attorney general, and oral argument by *Stephen M. Sobota,* assistant attorney general.

Before Gartzke, P.J., Bablitch and Dykman, JJ.

GARTZKE, P.J.   The employer and insurance carrier have appealed from the judgment of the circuit court confirming an order of the defendant department entered in a worker's compensation proceeding initiated by the applicant employee which affirmed the examiner's findings and order.

Applicant began work for the employer in 1954 as a common laborer. His last day of work for the employer was May 30, 1975. Applicant suffered five compensable back injuries before that date. The first three injuries occurred in 1957, 1958 and 1968, when the employer was insured by Employers Mutual Liability Insurance Company of Wisconsin. As a result of those injuries, Employers Mutual paid temporary total disability benefits to the applicant. The last such payment was made January 14, 1969.[1]

The applicant suffered three more compensable back injuries in 1973, 1974 and on May 30, 1975, when the employer was insured by appellant American Mutual. As a result of those injuries, American Mutual conceded and paid temporary total disability benefits to the applicant for intermittent periods up to August 18, 1975.

The examiner made these material findings of fact:

That prior to his compensable injury of May 30, 1975 the applicant has suffered recurrent acute lumbosacral strains, as a result of which he developed arthritic changes in his lumbar spine, and degenerative disc disease in the lumbar spine; that following each of his compensable injuries prior to May 30, 1975, the applicant was, however, able to return to work, with gradually increasing restrictions on his activities; that prior to May 30, 1975 the applicant suffered a permanent partial disability of 30 percent as compared to permanent total disability as a result of all five compensable injuries; that on May 30, 1975, the applicant slipped on a piece of metal at work and suffered another acute aggravation of his lumbar spine injury; that the applicant's condition has significantly deteriorated and he has not been able to return to work since May 30, 1975; that as

[1] The applicant did not file his application for hearing until December 16, 1975. The examiner found that any claim against Employers Mutual was barred by the six-year statute of limitations, sec. 102.17(4), Stats., and dismissed the application as it relates to that insurer.

a result of his compensable injury of May 30, 1975, the applicant's limitations on activity have increased; . . . that as a result of his compensable injury of May 30, 1975, which injury aggravated the preexisting back difficulties the applicant evidenced, the applicant can perform no services other than those which are so limited in quality, dependability, and quantity, that a reasonably stable market for them does not exist; that as a result of his compensable injury of May 30, 1975, the applicant is permanently totally disabled . . .

Appellants argued before the department and the circuit court that appellants are responsible only for 70% of applicant's disability and that further benefits should come from the "second injury fund" established by sec. 102.59(1), Stats., which provides,

If an employe has at the time of injury permanent disability which if it had resulted from such injury would have entitled him to indemnity for 200 weeks less $2\frac{1}{2}\%$ thereof for each year of age above 52 years with no reduction in excess of 50%, and, as a result of such injury, incurs further permanent disability, which entitles him to indemnity for 200 weeks less $2\frac{1}{2}\%$ thereof for each year of age above 52 years with no reduction in excess of 50%, he shall be paid from the funds provided in this section additional compensation equivalent to the amount which would be payable for said previous disability if it had resulted from such injury or the amount which is payable for said further disability, whichever is the lesser. If said disabilities result in permanent total disability the additional compensation shall be in such amount as will complete the payments which would have been due had said permanent total disability resulted from such injury. Such additional compensation shall accrue from the end of the period for which compensation for permanent disability resulting from such injury is payable by the employer, and shall be subject to s. 102.32(6) and (7).

The circuit court found there is credible evidence to sustain the examiner's finding that the May 30, 1975,

injury aggravated applicant's pre-existing condition. It found applicable the test of causation set forth in *Lewellyn v. ILHR Department*, 38 Wis.2d 43, 59, 155 N.W. 2d 678 (1968), to the effect that the employee may recover if the work activity precipitates, aggravates and accelerates beyond normal progression a progressively deteriorating or degenerative condition. The court held that as the *Lewellyn* test was applicable, appellants are liable for the entire disability, not merely the percentage caused by the work activity as opposed to the pre-existing condition. The court concluded that nothing is payable from the second injury fund because, under *Lewellyn*, appellants are liable for the compensation for applicant's permanent total disability.

As we understand appellants' position, they concede applicant's right to compensation. They state that the issue is "apportionment" of liability for worker's compensation benefits as between an employer and the second injury fund. We hold that apportionment is not available.

Appellants contend that the first sentence of sec. 102.-59(1), Stats., requires mandatory payment from the fund if the pre-existing and subsequent disabilities meet the statutory minimums, and that the second sentence which pertains to total disability merely modifies calculation of benefits. Permanent partial disability benefits are payable for specified weeks and permanent total disability benefits are payable for life. Secs. 102.44(2) and (3), 102.52, Stats. Appellants assert that it is the first sentence which requires payment from the fund and that the second sentence only assures that the totally disabled employee will receive payments for life by providing that additional compensation payable to that employee from the fund is in such amount as will complete payments which would have been made had the total disability resulted from the subsequent injury alone. Appellants state

that the May 30, 1975, injury must have caused 70% of applicant's total disability because the examiner found the pre-existing disability was 30%. They conclude the second injury fund must pay permanent total disability benefits to applicant when appellants complete benefit payments based on 70% disability.

The issue before us is whether the fund pays additional compensation to the employee if the employer has a liability for permanent total disability. We conclude the fund has no such liability because the third sentence of sec. 102.59(1), Stats., provides that the additional compensation accrues "from the end of the period for which compensation for permanent disability resulting from such injury is payable by the employer . . ." If the additional compensation payable from the fund accrues from the end of the period for which compensation is payable by the employer, then it is only where the employer is liable for permanent partial disability and has completed payments for that disability that the fund is required to make a payment to the employee. If the employer must pay disability benefits for the life of the employee, as where the employer is liable for permanent total disability, nothing is payable from the fund.

The examiner found that the applicant was 30% permanently partially disabled prior to May 30, 1975, but after each of his pre-May 30, 1975 injuries, applicant was able to return to work. The examiner did not find that applicant's preexisting disability contributed to his total disability or that applicant was 70% disabled as a result of his May 30, 1975 injury. The examiner found that "as a result of his compensable injury of May 30, 1975, which injury aggravated the preexisting back difficulties the applicant evidenced, the applicant can perform no services other than those which are so limited in quality, dependability, and quantity, that a reasonably stable market for them does not exist."

The finding of total disability is based on the rationale of *Balczewski v. ILHR Department,* 76 Wis.2d 487, 251 N.W.2d 794 (1977). *Balczewski* holds that where as a result of an injury plus the employee's age, education and capacity, the employee is unable to secure continuing and gainful employment, then the employee may be found to be permanently totally disabled. Appellants state their appeal does not question the sufficiency of the evidence supporting a finding of permanent total disability under *Balczewski.*

Appellants nevertheless urge that sec. 102.59(1), Stats., requires, in their words, "apportionment of liability for conceded indemnity between the employer and the second injury fund." If apportionment in the sense used by appellants were available under the statute, then an employer could use the fund as a defense to, or as a source of reimbursement for, part of the employer's liability. Nothing in sec. 102.59(1), Stats., indicates an intent to change an employer's liability. Neither the first nor the second sentence imposes a liability upon an employer for a preexisting disability which can be separated from the effects of a later injury. The employer has no such liability. *Semons Department Store v. ILHR Department,* 50 Wis.2d 518, 525, 184 N.W.2d 871 (1971). Neither sentence shifts to the fund all or part of an employer's liability arising out of the rule that employers take employees "as is"[2] on the principle that if the work activity precipitates, aggravates and accelerates a progressively deteriorating or degenerative condition, it is an accident causing injury. *Lewellyn v. ILHR Department,* 38 Wis.2d at 59.

---

[2] *Milwaukee Western Fuel Co. v. Industrial Comm.,* 245 Wis. 334, 13 N.W.2d 919 (1944); *Green Bay Whse. Oper., Inc. v. Industrial Comm.,* 19 Wis.2d 11, 119 N.W.2d 435 (1963); *M. & M. Realty Co. v. Industrial Comm.,* 267 Wis. 52, 64 N.W.2d 413 (1954); *Semons Department Store v. ILHR Department,* 50 Wis.2d 518, 528, 184 N.W.2d 871 (1971).

*Koski v. Erie Mining Co.*, 300 Minn. 1, 223 N.W.2d 470 (1973), cited by appellants, is not in point. The Minnesota Supreme Court held that that state's second injury statute is intended to encourage employment by relieving employers of part of their liability for aggravation of an employee's preexisting disability. The statute provided that if an employee is injured and suffers disability which is substantially greater because of a preexisting disability, the employer shall "pay all compensation . . . , but he shall be reimbursed from the special compensation fund for all compensation paid in excess of . . ." certain limits. Section 102.50(1), Stats., contains no comparable provision.

*By the Court.*—Judgment affirmed.