Vincent G. CAPORALI, Plaintiff-Respondent and Cross-Appellant-Petitioner,

v.

WASHINGTON NATIONAL INSURANCE COMPANY, Defendant-Appellant and Cross-Respondent-Cross-Petitioner.

Supreme Court

*No. 79–1653. Argued April 27, 1981.—Decided June 30, 1981.*

(Also reported in 307 N.W.2d 218.)

For the petitioner there were briefs (in court of appeals) and oral argument by *Edward P. Rudolph* of Milwaukee.

For the defendant-appellant there was a brief (in court of appeals) by *Robert L. Elliott, Margaret T. Lund* and *Cook & Franke, S.C.*, of Milwaukee, and oral argument by *Mr. Elliott*.

HEFFERNAN, J.   This is a review of an unpublished decision of the court of appeals dated August 26, 1980, which affirmed in part and reversed in part a judgment of the circuit court for Waukesha county, Max Raskin, Reserve Judge, presiding.

On this review we reverse that portion of the court of appeals' decision which reversed the trial court judgment. By so doing, we affirm the entire judgment entered by the circuit court.

This action by Vincent G. Caporali against the Washington National Insurance Company arises under a group disability income policy which was issued originally to Caporali on September 24, 1965. The group to which the policy was applicable and of which Caporali was a member were practicing pharmacists in the state of Wisconsin. The policy provided monthly benefits for sixty months if "total disability" was incurred as the result of "sickness" and monthly benefits for life if "total disability" was incurred as the result of "accidental bodily injury." The terms, "sickness" and "accidental bodily injury," were not defined in the policy.

The records shows that Caporali testified that, in August of 1971, while the disability income policy was in effect, he fell in a bathroom and struck his head. Sometime after this, Caporali stated that he noticed numbness in his fingers and hands and a loss of control of his legs. Caporali claimed that his disability started with this bathroom fall. Symptoms continued through 1971 and

1972, and in January of 1973, after Caporali left his employment as a pharmacist, he filed a claim for disability benefits with Washington National.

Payments were made retroactive to November 6, 1972, and continued until January of 1974. At trial, the principal reason asserted for the cessation of payments was that medical information in possession of Washington National showed that Caporali was only partially disabled.

There was testimony at the time of trial that Caporali's condition was the result of a thickened *ligamentum flavum,* a thickened ligament surrounding the spinal cord in the neck area. There was testimony that it was this thickened ligament which caused pressure and "injury" to the spinal cord when the neck was flexed. Nothing in the trial record tended to show that any force external to Caporali's body had caused this thickening of the *ligamentum flavum.* Nevertheless, there was testimony by one of Caporali's physicians that "the external force would be this ligament buckling against the spinal cord, which suffered the injury."

It was the contention of the defendant, however, that the injury insured against was one caused by violence external to the body, and it was therefore argued that the injury to the spinal cord as the result of the thickened ligament was not a covered injury.

Another issue at trial was whether Caporali was totally disabled. Over the objections of Washington National, the trial court in its instructions modified the policy definition of "total disability" by stating:

"This, however, does not mean a state of absolute helplessness. All it requires is that the insured be incapable of doing all the substantial and material acts necessary to the prosecution of the insured's regular business for which he's reasonably fitted by education, training and experience."

At trial, the insurance company also asserted that the reason for Caporali's inability to work as a pharmacist was not physical disability, but Caporali's arrest and conviction for possession of controlled substances (drugs) with the intent to sell. Washington National unsuccessfully attempted to introduce evidence of Caporali's arrest and conviction.

A jury verdict was returned finding that Washington National breached its insurance contract by refusing to pay benefits from February 1974 to November 1977 and by refusing to pay benefits from 1977 until the date of the verdict. The jury also found that Caporali was suffering from a condition "which is permanent in nature and totally disabling by reason of an injury that occurred during the period of the contract of insurance."

Following the verdict the court entered a judgment directing that disability payments accruing between February 1974 and the date of judgment were to be paid with interest at the rate of 5 percent on each monthly payment, and that, beginning with the first day of the month following the entry of judgment, the company be required to pay $550 per month during the life of the plaintiff. Both parties appealed this judgment.

Washington National Insurance Company appealed from the whole of the judgment, contending that it was error to refuse to allow evidence regarding Caporali's arrest and conviction and that the court erred in defining "total disability" and in defining "accidental bodily injury." The plaintiff Caporali cross-appealed from the judgment, claiming that, because Washington National had repudiated its insurance contract, Caporali was entitled to damages for anticipatory breach of contract. He asserted that, instead of being required to wait for the payment of monthly installments, he should have the immediate right to the lump sum present value of future disability payments based upon his life expectancy.

The court of appeals held that Washington National had failed to make an adequate offer of proof in respect to evidence of Caporali's alleged conviction on a drug-related offense. It therefore sustained the trial court's exclusion of this evidence and, in addition, concluded that in any event the trial court's ruling was not prejudicial. The court of appeals upheld the trial court's definition of "total disability," and we conclude that, in so doing, it properly relied upon this court's decision in *Harker v. Paul Revere Life Ins. Co.*, 28 Wis.2d 537, 137 N.W.2d 395 (1965).

The trial court's instruction defining "accidental bodily injury" was also affirmed by the court of appeals.

The court of appeals specifically affirmed the substantive disposition of the case by the trial court and approved of the instructions submitted to the jury. In respect to whether Caporali's disability was caused by an injury as defined by the policy, the court of appeals stated:

"The treating physician testified that Caporali's condition was caused by a thickened *ligamentum flavum* which was buckling when the neck was hyperextended. This buckling was causing pressure on the spinal cord, resulting in injury to the spinal cord, thus causing the plaintiff's condition. We conclude that the jury could, on this credible evidence, find that the action of one part of the body causing injury to another was an 'accidental bodily injury.'" (Slip op. pp. 9–10.)

The court of appeals held, however, that the method utilized for the award of damages was inappropriate. The trial court directed in its judgment that the plaintiff be paid the sum of $550 on the first day of each month during the balance of Caporali's life. The court of appeals, agreeing with Washington National, concluded, however, that it was erroneous to enter any judgment awarding future benefits unless there was a finding of a

"repudiation" of the insurance contract by Washington National. The court of appeals defined "repudiation" as "a bad faith rejection by the insurer of its duty to perform under a contract." (Slip op. p. 10) The court of appeals pointed out that the trial court made no finding of repudiation and that the facts of record would not have supported such a finding. The court of appeals allowed a judgment which directed payment of monthly benefits to the date of the jury verdict.

Both parties petitioned this court for review of the court of appeals' decision. Washington National asked for review only on the question of whether "accidental bodily injury," as defined by the trial court, was properly accepted by the court of appeals. In its petition for review it made no objections to the definition of "total disability," to any evidentiary problems, or to the sufficiency of the evidence. Only the definition of "accidental bodily injury" is raised on this review by Washington National.

The plaintiff Caporali's petition for review asserts that the court of appeals had the duty of modifying the judgment to direct a lump sum payment of the present value of future disability payments based upon the plaintiff's life expectancy.

We first address Washington National's argument that the trial court's instruction defining "accidental bodily injury" was erroneous.

In the insurance policy, the word, "injury," was undefined. In defining "total disability," the policy states that the term means "complete inability of the Insured due to injury." The insuring covenant of the policy merely states, "The Company hereby insures . . . against . . . losses and disability . . . from accidental bodily injury . . . ."

On this review Washington National again asserts that "accidental bodily injury" coverage is limited to bodily injury resulting from physical external forces known as accidents. One fact is immediately clear, and that is that the policy did not articulate that limitation. The trial court instructed the jury on the meaning of that provision by stating:

"And ACCIDENTAL BODILY INJURY means an injury affected directly and solely through accidental causes or means such as a fortuitous event which is an event that takes place without foresight, expectation or design."

This definition suffers from the defect asserted by the insurance company—it defines an accidental injury as being an injury caused by an accident. So in effect does the policy. However, the writing of the policy, the definition of terms, and the conditions upon which liability rests lie completely within the control of Washington National. The insurer could have made it absolutely clear that its coverage was to apply only to circumstances where injuries were occasioned by violence external to the body of the insured, but this it failed to do; and, accordingly, this undefined term, "accidental bodily injury," is subject to judicial construction.

We have stated the standards for construction of terms in insurance policies:

"Contracts of insurance are controlled by the same principles of law that are applicable to other contracts. A policy of insurance like any other contract is to be construed so as to give effect to the intention of the parties. In the case of an insurance contract, the words are to be construed in accordance with the principle that the test is not what the insurer intended the words to mean but what a reasonable person in the position of an insured would have understood the words to mean. Whatever ambiguity exists in a contract of insurance is resolved in favor of the insured. This is a restatement of the

general rule that ambiguous contracts are to be construed most strongly against the maker or drafter. Words or phrases in a contract are ambiguous when they are reasonably or fairly susceptible to more than one construction." *Garriguenc v. Love,* 67 Wis.2d 130, 134–35, 226 N.W.2d 414 (1975).

While the trial court definition used in instructing the jury may not have comported with Washington National's secret but unexpressed intentions, we think the definition used by the trial court was a reasonable one. Resort to the dictionary for the ordinary meaning of "accident" makes it clear that the term is not limited to forces external to the body. For example, it is common parlance to refer to a "cerebral accident," which Webster's Third New International Dictionary (1965 ed.) defines as "a sudden damaging occurrence (as of hemorrhage) within the cerebrum . . . ." Webster's includes, among the definitions of "accident," "an unexpected medical development esp[ecially] of an unfavorable or injurious nature occurring in apparently good health . . ." and "an unexpected happening causing loss or injury which is not due to any fault or misconduct on the part of the person injured but from the consequences of which he may be entitled to some legal relief." The same source defines "accidental" as, *inter alia,* "unpredictable," and gives synonyms as "fortuitous, adventitious, contingent, casual, incidental." These definitions, while not exclusive of the various meanings of the term, are supportive of the reasonable definition used by the trial court in instructing the jury.

The court of appeals correctly pointed out that the worker's compensation law of Wisconsin defines "accident" in terms almost identical to those used by the trial court. *Semons Department Store v. ILHR Dept.,* 50 Wis. 2d 518, 522, 184 N.W.2d 871 (1971), defines an "accident" as "a fortuitous event, unexpected and unforeseen by the injured person." Nothing in the language of

the insurance policy rules out compensation for a totally internal accident. Had the drafters of the policy intended to limit liability to accidents caused by forces external to the body, it would have been simple enough to do so. Either it was not their intent to so limit the effect of the policy or the policy was drafted ineptly. In either event, it must be construed to favor the insured and not the insurance company.

It should be noted in passing, however, that there was testimony that the injury to the spinal cord resulted from forces external to it, that is, it sustained repeated assaults by the thickened *ligamentum flavum*. In view of the medical testimony of Dr. James C. Hanson that the ligament buckling against the spinal cord was an *external force*, there might well have been proof sufficient to find liability even under the insurance company's proposed definition. We, however, do not base our conclusion upon that evidentiary fact. We are satisfied that the trial court, faced with instructing the jury on the meaning of the term, which the insurance company did not attempt to define in its policy, acted reasonably when it used a definition similar to that which had been given approval by this court in worker's compensation cases. We do not intend to intimate that the standards are, or necessarily should be, the same; but construing the terms of this policy to resolve any uncertainties or ambiguities in favor of the insured, we conclude that the trial court's construction and the affirmance of that construction by the court of appeals was not erroneous. We conclude, therefore, that the only issue raised by Washington National on this review is without merit, and we affirm the court of appeals' determination upholding the instruction of the trial court in defining "accidental bodily injury."

The remaining issue is in respect to the method by which Washington National's obligation, by reason of the jury's finding of permanent disability, is to be dis-

charged. The plaintiff Caporali asserts that, because there has been a finding that Washington National breached its insurance contract, he is entitled to the present value of monthly payments of $550 computed on his life expectancy. Washington National asserts that there has been no "repudiation" or "anticipatory breach" and, therefore, the plaintiff's only entitlement is to monthly disability payments which have accrued prior to the time of the trial court judgment.

The trial court ordered, in addition to payment of amounts owing up to the date of judgment, monthly payments of $550 per month with 5 percent interest, "until paid each and every month during the natural life of plaintiff." The court expressly "reserve[d] jurisdiction" to enforce this latter provision. Caporali's complaint had requested a declaratory judgment of entitlement to such full future lifetime benefits under the insurance contract. No allegation appears in the pleadings that Washington National repudiated or anticipatorily breached the contract and, although the jury verdict was formulated so as to characterize Washington National's nonpayment of benefits as a "breach" of the insurance contract, the case was not tried on any express theory of anticipatory repudiation.

The question is whether any payments *in futuro* beyond the benefits owing as of the date of judgment—payable either in monthly installments or, as Caporali requests on review, in a lump sum discounted to present value—could properly be awarded. The court of appeals reversed that part of the judgment respecting future benefits, ruling that any such award was improper because it would depend on complete repudiation of the contract, which was neither found by the trial court nor supported by the record.

Where an insurer wrongfully breaches its contract "by an improper forfeiture, repudiation, or similar act

inconsistent with its legal duty to the policyholder, the latter may, in some jurisdictions, sue at law to recover damages for breach of contract." 20 Appleman, *Insurance Law and Practice,* sec. 11251, p. 3 (1980). Wisconsin recognizes such an action. *Neuberger v. Aid Association for Lutherans,* 207 Wis. 133, 135, 240 N.W. 885 (1932). The theory is anticipatory breach of contract. Appleman, *supra, id.* at p. 7.

In general, however, the insurer's breach, to justify *in futuro* damage awards, must be an unqualified renunciation or outright repudiation. "Mere refusal, upon a mistake or misunderstanding as to matters of fact or upon an erroneous construction of the disability clause, to pay a monthly benefit when due, is sufficient to constitute a breach of that provision, but it does not amount to a renunciation or repudiation of the policy." 15 Couch, *Insurance* 2d, sec. 53:322, p. 261 (1966); a "mere refusal to pay, or a denial of liability upon specified grounds, which the insurer honestly believes to be valid, is not such an outright repudiation as amounts to a renunciation of the contract." Appleman, *supra, id.* at p. 12.

Under this traditional doctrine, the pleadings, verdict, and trial court decision in this case would not support a finding of anticipatory breach by Washington National. As the court of appeals ruled, the record does not support plaintiff's argument that the insurance contract was repudiated outright; there was a legitimate controversy over whether plaintiff's condition was within the coverage of the policy, and it could not be said, under these traditional doctrinal tests, that Washington National's refusal to pay amounted to an anticipatory breach of the contract.[1]

---

[1] Nor did Washington National's termination of Caporali's policy, effective August 24, 1974, constitute repudiation or anticipatory breach. This termination was based on the fact that Caporali was no longer a member of the Wisconsin Pharmaceutical Association.

Moreover, even where there is such classical anticipatory breach, the jurisdictions appear to be split over whether *in futuro* benefits (either installment or lump sum) may be awarded. Some jurisdictions limit the available award to installments which have accrued as of the time of judgment, "the insured having a separate right of action for each monthly instalment of indemnity payable by the insurer. . . . [W]here the action is brought to recover disability benefits, it is held that the doctrine of anticipatory breach does not apply to the repudiation of a contract to pay money in futuro, whether in instalments or otherwise." Couch, *supra, id.* at sec. 53:328, pp. 264-65. Other jurisdictions, however, hold that the insured may sue to recover both installments presently due and installments to become due in the future. Couch, *supra, id.* at sec. 53:331, p. 266.

A number of authorities have criticized the doctrine of anticipatory breach and the harsh treatment of insureds which may result from its strict application. Appleman, for example, argues for both a more liberal interpretation of what substantively constitutes anticipatory breach and greater judicial flexibility in finding remedies therefor. Particularly with respect to disability cases, he criticizes both courts which have limited recovery to benefits presently due under the policy (where the insurer had discontinued payment) and courts which have been reluctant to find anticipatory breach on the basis of evidence presented; Appleman argues for a broad view of anticipatory breach and a one-time lump sum award of *in futuro* payment:

". . . all courts are inclined to find disability to exist where an insured cannot perform his usual duties in the customary manner, irrespective of technical definitions placed in the policy drafted by the insurer. When it comes time to collect the benefits promised, a disabled insured is in a deplorable condition to do battle with a powerful insurer which can hire expert defense counsel

and do battle up through the reviewing courts, as has been seen from the decisions cited. The sudden cessation of the promised income, when earnings have ceased, the accumulation of bills, the anxiety and stress of pending litigation—these work a hardship upon an insured and place him in a markedly disadvantageous bargaining position.

"It is for this reason that some courts, such as California, have been quick to allow damages in such situations for emotional distress, and even to award punitive damages (the latter of which I am not in accord with), against insurers wrongfully refusing to pay promised disability benefits. To require an insured, who presumably is permanently disabled, to return upon numerous occasions, to sue for accumulated benefits, as required by one federal court sitting in Missouri, loses sight of the fact that courts are supposed to render justice. In such event, it seems more just to employ the doctrine of anticipatory breach with greater liberality. The question whether permanent disability exists is a factual one, like any other. The insurer may challenge it, at its peril. If the finding is for the insured, then the damage award may include the present value of all future payments. As a practical matter, how else can the insured afford to engage competent counsel to represent him? Few able lawyers work solely for the experience, and it is important that the insured be able to engage advocates of skill equal to that of defense counsel." Appleman, *supra,* sec. 11251, p. 15.

See also *Greguhn v. Mutual of Omaha Ins. Co.,* 23 Utah2d 214, 461 P.2d 285, 288–90 (1969). In that case an insurer denied liability to make further payments on the ground that plaintiff's disability was not due to a cause covered by the policy. The dissenting opinion, in apparent agreement with the passage from Appleman quoted *supra,* argued that this was sufficient to qualify as repudiation so as to allow *in futuro* recovery in the one action, without necessitating repeated returns to court by the plaintiff for enforcement.

The majority opinion in that case, however, refused to go so far as would Appleman and the dissent in modi-

fying the doctrine of anticipatory breach; it held that the insurer's liability was limited to payments already accrued, on the ground that in a unilateral contract for payment in installments after default on one or more, no repudiation can amount to an anticipatory breach of the rest of the installments not yet due. The majority was clearly uncomfortable with this doctrine-based resolution, however; it ended the opinion by observing:

"Should [the insurer] fail in the future to make payment in accordance with the terms of the policies without just cause or excuse and the plaintiff is compelled to file another action for delinquent installments, the court at that time should be able to fashion such relief as will compel performance." *Id.*, 461 P.2d at 287.

We adopt a middle ground between the positions articulated by Appleman, *supra* (and the dissent in *Greguhn, supra*), and that of the majority in *Greguhn*. The former requires an unnecessary, and perhaps unwieldy, modification of the doctrine of anticipatory breach; moreover, insofar as it would authorize the award of future payments in a present lump sum, it may be unjust to insurers who challenge their liability in good faith.[2] The latter, however—the approach taken by the *Greguhn* majority—is also unsatisfactory, because it declines to adopt a judicial remedy which would greatly ameliorate the problem aptly described by Appleman in the quoted passage.

The view we adopt is precisely that taken by the trial court in this case. We hold that the award of future payments, with interest, in installments as they become due, is the proper reconciliation of the competing interests and is fair to both insurers and insureds. Moreover, we

[2] *See* Holmes, *Anticipatory Repudiation and Insurance Installment Payment Obligations: Anachronistic Application of a Uniform Formula*, 40 Ins. Couns. J. 396, 401 (1973).

note that this view has received the approbation of at least two commentators. Appleman argues, as a second-best alternative to the one he proposed *supra:*

"The only other remedy would be to award benefits to date, plus substantial damages for emotional distress,[3] and for the court in its order to dictate that the insurer pay monthly benefits as they fall due, retaining jurisdiction so that—in the event of default—the insured may return into court to ask for sanctions against a delinquent company. In that respect, such judgment would be similar to a decree for specific performance. It is time for the courts to cast aside the niceties of past legal syllogisms and look to the realities of the situations presented, with a view to accomplishing practical justice." Appleman, *supra*, sec. 11251, p. 16.

Another commentator has stated to the same effect:

"The most feasible solution, which gives due regard to an insurer who makes a good-faith denial of liability and to the insured limiting to a minimum litigation expenses, is for a court to enter an order calling for future installments to be made as they fall due. That order should provide for the continuance of the case on the court docket and direct the insurer to pay the future installments if, and when, they mature. The court retains the case until completion of the payment and the procedure amounts to specific performance. A number of courts, most notably Kentucky, have followed this more satisfactory solution. The installment judgment, a familiar device in Continental Europe, is virtually unknown to Anglo-American common law, but it is an innovation which American courts should follow." Holmes, *Anticipatory Repudiation and Insurance Installment Payment Obligations: Anachronistic Application of a Uniform Formula,* 40 Ins. Couns. J. 396, 402 (1973).

Upholding the validity of such installment judgments, *see Equitable Life Assur. Soc. of the U. S. v. Goble,* 254

---

[3] Appleman's comment on the propriety of damages for emotional distress is, of course, not before us in this case, and we express no opinion as to the propriety of such an award if alleged and proved in an action like the present one.

Ky. 614, 72 S.W.2d 35 (1934); *Equitable Life Assur. Soc. of U. S. v. Branham,* 250 Ky. 472, 63 S.W.2d 498 (1933). *See also John Hancock Mut. Life Ins. Co. v. Cohen,* 254 F.2d 417 (9th Cir. 1958).[4]

We adopt this reasoning, and accordingly we affirm the trial court's judgment requiring Washington National to pay future installments on a monthly basis, as they become due. We deem the trial court's stated "retention of jurisdiction" as nothing more than a comment that it will remain available to the plaintiff in the event that there should be any future noncompliance with the judgment, and that, upon a showing thereof, it may find, as we hereby authorize it to do, that the defendant's noncompliance with these terms of the judgment will result in award to the plaintiff of the discounted full amount due *in futuro,* as a present lump sum, or other equitable remedies it may deem appropriate in addition to, or instead of, this one.

Accordingly, we conclude that the court of appeals correctly sustained the trial court's instruction defining "accidental bodily injury." We approve that instruction not because it is necessarily correct in all instances, but because it is a reasonable construction of the terms which the insurance contract failed to define. Had the policy by its terms clearly showed the intent that "acci-

---

[4] In this last-mentioned case, the court declined to apply the doctrine of anticipatory breach to an insurer's failure to pay and reversed a lump sum award. The court, however, held that an order for future installments to be paid when they became due be decreed. It stated:

"It is our conclusion that the theory of anticipatory breach is not here applicable—to make it so where the defendant insurer has disputed liability in good faith would change the terms of the contract executed by the insurer and force him to pay now what he contracted to pay later; that the court should decree that money already overdue shall be paid now with interest; and that future installments shall be paid as they fall due, including the final payment." *Id.* at 427.

This is the approach we adopt in the present case.

dental bodily injury" meant only such trauma that was occasioned by forces external to the body, that instruction so stating would no doubt have been appropriate. Under the circumstances, however, the external-force definition urged by the insurance company was properly rejected by the trial court. However, we reverse that part of the court of appeals' decision which barred the portion of the judgment requiring that payments be made on a monthly basis during the balance of Caporali's life.

We conclude that the trial court's judgment was in the public interest. It avoids a multiplicity of suits and gives effect to the jury verdict that Caporali is permanently disabled. The permanency of that disability is, by the judgment, *res judicata*. There is no reason, in law or in equity, why that jury verdict should not be given effect into the future.

However, we cannot agree with Caporali's position that he is now entitled to the present value of the future lifetime payments. As far as we can discern from the examination of the record, Washington National's defense was undertaken in good faith and on the basis of a genuine dispute about the facts and the meaning of the policy terms. Without approving or disapproving of the philosophy behind the theories of anticipatory breach or repudiation of contracts, it seems rather clear that the imposition of paying present value of future obligations is based upon the punitive motive of penalizing bad-faith breaches of contract. None of the elements which would justify punitive action are shown by the record here. Caporali bargained and paid for monthly payments for the rest of his life in the event of permanent disability. He has been found in a good-faith proceeding, countered by a good-faith defense, to be permanently disabled. He is entitled to recover in accordance with the terms of his contract, and under that contract it is adjudged that he shall be paid the sum of $550

per month for the rest of his life. He is presently entitled to no more.

*By the Court.*—Decision affirmed in part and reversed in part.

ABRAHAMSON, J., took no part.