BODE, Plaintiff, v. BUCHMAN and another, Defendants and Third-Party Plaintiffs and Appellants: KLAMIK and another, Third-Party Defendants and Respondents.

*No. 422. Argued March 4, 1975.—Decided May 6, 1975.*
(Also reported in 228 N. W. 2d 718.)

For the appellant there was a brief by *Prosser, Wieda-bach, Lane & Quale, S. C.* of Milwaukee, and oral argument by *William P. Croke* of Milwaukee.

For the plaintiff-respondent there was a brief by *Hippenmeyer, Reilly & Arenz* of Waukesha, and oral argument by *William F. Reilly.*

For the defendants-respondents there was a brief by *Lowry, Hunter & Tikalsky* of Waukesha, and oral argument by *James L. Steimel* of Waukesha.

DAY, J. Several issues are raised as grounds for reversal of the order dismissing Marilyn E. Klamik (Mrs. Klamik) as a third-party defendant prior to submission of the case to the jury and of the judgment on the verdict in favor of Jeffrey B. Bode (plaintiff) and against the Rev. Father William J. Buchman (defendant) and his insurer. In none do we find a ground for reversal.

This case arises out of an auto accident involving two automobiles and a motorcycle; it occurred at the intersection of Highway 16 and Nagawicka Road, east of the city of Oconomowoc in Waukesha county. Highway 16 runs in an easterly-westerly direction at the site of the accident, with Nagawicka Road intersecting it from the south. This is a T intersection with Nagawicka Road forming the base of the T and Highway 16 forming the top. Highway 16 is a two-lane road, but at the intersection there is a passing lane on the north side of the roadway which extends about 300 feet in each direction from

the intersection and then tapers off for another 114 feet until the highway is again the usual two lanes. The total width of the three lanes of Highway 16 at this intersection is about 33 feet. The passing lane is about 10½ feet wide. The three vehicles involved were traveling west on Highway 16 at the time of the accident at approximately 11:10 in the morning on September 5, 1970. Traffic was heavy and the weather was good. The third-party defendant Mrs. Klamik was going to turn left, or south, onto Nagawicka Road. The testified she braked slowly and came to a gradual stop. She had turned on her left-turn signal as she passed a yellow caution sign 500 feet from the intersection. After she stopped at the intersection waiting to make her turn, she saw in her rearview mirror a light-colored car approach and make a fairly swift turn and pass her in the passing lane to her right. She then looked forward to determine whether she could make her turn. Following the light-colored car was a green Oldsmobile Toronado driven by the defendant.

Following defendant were four motorcyclists, including the plaintiff, who testified he was riding in the lead position of the four motorcycles. He said they had been following the defendant's automobile for about three miles. Plaintiff testified he was going approximately 50 miles per hour and maintaining a distance of 100 to 125 feet behind the defendant's automobile. As they came within about 700 feet of the intersection, with which he said he was very familiar, he noticed Mrs. Klamik's vehicle as the light-colored car swiftly passed around to the right. He testified she had both her brake lights on and her left-turn signal and that she was either stopped or almost stopped, waiting to turn into Nagawicka Road. Plaintiff testified that the defendant's car was about 150 to 170 feet behind Mrs. Klamik. After the light-colored car had gone around Mrs. Klamik, the defendant's

brake lights went on and he moved out into the passing lane and had both right wheels in that lane. As the defendant moved into that lane, so did the plaintiff. He testified that he honked his horn. This was also testified to by one of the other cyclists. Plaintiff testified that by this time Mrs. Klamik had stopped completely. Then the defendant moved out of the passing lane and back into the normal westbound traffic lane behind Mrs. Klamik, braking harder while the plaintiff braked gently and down-shifted. He testified that the defendant, while in the normal westbound lane, slowed down to about 10 miles per hour and that the plaintiff slowed to about 15 miles an hour in the passing lane and was therefore gaining slightly on the defendant. As the defendant was within about 20 feet of Mrs. Klamik's stationary vehicle, he suddenly accelerated and swung out to the far edge of the passing lane, trying to pass Mrs. Klamik; he hit or brushed her right-rear fender with the left-front portion of his car and the rear of the defendant's automobile then "fishtailed" out into the passing lane and the right-rear corner slammed into the plaintiff's left leg, sending him and his motorcycle into the ditch. This testimony was supported by one of the cyclists, Mr. Dentici.

The defendant gives a somewhat different account. While he testified he was familiar with the road and this intersection, he was unable to recall if there was any passing lane on the north side of the roadway at this point and whether there was an extended shoulder or whether it was graveled or paved. He did not testify that he entered the passing lane twice; he testified he was following a light-colored car and that as it slowed down, he reduced his speed; then the light-colored car swiftly went around Mrs. Klamik's car and he saw her car for the first time and her left-turn signal was on. He said he braked continuously so he was going much slower than 50 miles per hour by the time the light-colored car

swerved out and passed Mrs. Klamik; nevertheless, by the time that car passed and he saw Mrs. Klamik, he was not able to brake in time to avoid her so he braked and swerved into the passing lane to his right. He testified that he "brushed" her right-rear fender with the left-front of his car and came to a stop very soon, at or near where the actual impact occurred. He was unaware that there were any motorcycles behind him and admitted he probably did not signal as he swerved into the right passing lane. In a statement which he had given to the representative of his own insurance company he said that his car "fishtailed uncontrollably" just before the impact. At trial however, he said he did not understand the term "fishtail."

The defendant also relies on testimony of another of the motorcyclists, Peter Nelson. Mr. Nelson did not describe two movements by the defendant into the passing lane, as did the plaintiff and Mr. Dentici; rather, he said that the defendant accelerated, swerved, and sideswiped Mrs. Klamik and the rear of his car was forced out, hitting the plaintiff who was also in the center westbound lane and who, as the collision occurred, started to cut across the defendant's right-rear bumper in an apparent attempt to avoid the accident. Mr. Nelson testified he could recall some "commotion" but could not remember how far to the right the defendant had moved.

The defendant's car struck the plaintiff's left leg and hit the motorcycle at about midpoint, igniting the gas tank. The plaintiff received a severe injury to his leg, requiring a month of hospitalization and several operations. The plaintiff testified that while he was in the hospital the defendant visited him and said that the accident was the defendant's fault and that he was sorry. At the trial the defendant testified that his "present recollection" was that he did not say he was at fault.

In addition to striking the plaintiff, the defendant's vehicle also struck and damaged the motorcycle of Thomas Manning, the fourth cyclist. Plaintiff brought this action against the defendant and his insurer, Maryland Casualty Company, and the defendant and his insurer then filed a third-party complaint against Mrs. Klamik and her insurer Dairyland Insurance Company. After the plaintiff and the defendant had both put in their principal case, but prior to the time the plaintiff put on a final rebuttal witness, Mrs. Klamik and her insurer moved for a nonsuit, dismissing the third-party claim, which motion was granted. The jury returned its verdict on August 17, 1973, finding the defendant 90 percent causally negligent and the plaintiff 10 percent causally negligent. Damages were awarded to the plaintiff, which are not challenged on this appeal.

The defendant appeals from the whole of the order dated September 21, 1973, dismissing the third-party complaint against Mrs. Klamik and from the whole of the judgment of October 1, 1973, in favor of the plaintiff.

Defendant alleges it was error on the part of the trial court to fail to instruct the jury with respect to when and under what circumstances passing on the right is allowed. The defendant-appellant requested the trial court to instruct the jury on this matter.[1] The safety statute

---

[1] Defendant requested the following instruction:

"You are instructed that a safety statute requires that except when overtaking and passing on the right is permitted, the operator of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance.

"You are further instructed that a safety statute allows the operator of a vehicle to overtake and pass another vehicle upon the right only under conditions permitting such movement in safety and only if he can do so without driving off the pavement or main traveled portion of the roadway, and then only when the vehicle overtaken is making or about to make a left turn.

"You are further instructed that if you find that Jeffrey Bode violated the provisions of either of these safety statutes, he would be negligent with respect to the manner in which he attempted to overtake Father Buchman's vehicle."

referred to therein is sec. 346.08.[2] The requested instruction was in error because it failed to include sub. (2) of the cited statute. Even if this had been included, we would not regard the failure to give such instruction as error. Whether a requested instruction should be given depends entirely on the evidence adduced at trial. This court has said:

"A trial court is not required to give a requested instruction unless the evidence reasonably requires it, and this is true even though the requested instruction asserts a correct rule of law." *Belohlavek v. State* (1967), 34 Wis. 2d 176, 179, 148 N. W. 2d 665.

We have also said that the reviewing court is bound to construe the evidence in the light most favorable to the party seeking the instruction. *Gage v. Seal* (1967), 36 Wis. 2d 661, 667, 154 N. W. 2d 354, 155 N. W. 2d 557.

There is no evidence to show that the plaintiff entered the passing lane with the intention of passing the defendant. The only testimony on the issue in the record is from three motorcyclists. The plaintiff and Mr. Dentici both testified that the defendant entered the passing lane first and plaintiff merely followed him to pass Mrs. Klamik. Mr. Nelson testified that when the defendant

[2] "346.08 **When overtaking and passing on the right permitted.** The operator of a vehicle may overtake and pass another vehicle upon the right only under conditions permitting such movement in safety and only if he can do so without driving off the pavement or main-traveled portion of the roadway, and then only under the following conditions:

"(1) When the vehicle overtaken is making or about to make a left turn; or

"(2) Upon a street or highway with unobstructed pavement of sufficient width to enable 2 or more lines of vehicles lawfully to proceed, at the same time, in the direction in which the passing vehicle is proceeding; or

"(3) Upon a one-way street or divided highway with unobstructed pavement of sufficient width to enable 2 or more lines of vehicles lawfully to proceed in the same direction at the same time."

swerved out to pass Mrs. Klamik, the plaintiff was not yet in the passing lane but still following in the center lane and that he went into the passing lane only to avoid a collision. Mr. Nelson also admitted it was possible that the plaintiff moved to the right before the defendant did but did not testify that, if so, it was being done to pass the defendant rather than to avoid a collision with him.

The defendant in his brief does not point out what evidence it is that the jury could have believed that would show that the plaintiff was struck by defendant's car as he was attempting to pass it.

Even if we were to make the assumption made by the defendant that the plaintiff was in fact passing the defendant, under the facts here he would not have violated the requirement of sec. 346.08, Stats., of passing "only under conditions permitting such movement in safety, . . ." because he had no reason to contemplate that the defendant would suddenly move from the regular westbound lane into the passing lane when the plaintiff was already in it. It appears from the evidence that the defendant could not pass in safety with the motorcycle behind him and his testimony was that he did not even know the motorcycles were behind him.

We conclude, therefore, that the failure to give this instruction was not error.

The defendant next objects to the court's instruction on the question of following too closely with respect to the plaintiff and claims it was misleading and erroneous. In its instruction whether plaintiff was following too closely, the court referred several times to the operation of "a motor vehicle" or "vehicle," but in the final sentence the trial court used the word "car" three times. The defendant had submittted an instruction on the issue using the word "motorcycle" when reference was made to the plaintiff's vehicle. In all other respects, the defendant says the instruction was identical to the one he

had requested. If there was error here, it is not prejudicial. There was another instruction given on following too closely, which clearly applied to the defendant and Mrs. Klamik. The instruction here in question, had reference to question 3 of the special verdict which was directed to the contributory negligence of the plaintiff. We have said many times that there is no ground for reversal where a technically incorrect instruction could not mislead the jury and where the judge's true meaning must have been apparent to the ordinarily intelligent mind. *Wilson v. State* (1973), 59 Wis. 2d 269, 291, 208 N. W. 2d 134.

The defendant next contends there was reversible error in that the special verdict was misleading and confusing in its form because of the reference to "the accident." Defendant contends that there were really two accidents —the one with Mrs. Klamik and the one with the defendant and the motorcycle. The defendant had submitted a special verdict form which distinguished between the two and raises the failure to use the requested instruction as a ground for a new trial. Counsel for the plaintiff contends there were two collisions but only one accident. Counsel for the defendant in his argument to the jury said, ". . . this accident happened just kind of bang, bang, bang . . . ." By the time the jury got the verdict, Mrs. Klamik's nonsuit had been granted and she was out of the case. Thus the negligence in "the accident" had to be the negligence of either the defendant or the plaintiff. We conclude that the special verdict's reference to one accident did not confuse, mislead, prejudice, or restrict the jury in any way, and does not constitute a basis for reversal.

The defendant's contention that the trial court should have given the defendant's proposed instruction that the plaintiff was required by a safety statute to give audible warning before passing or attempting to pass a vehicle

proceeding in the same direction is without merit. Defendant requested an instruction based on sec. 346.07, Stats.[3] The statute plainly requires an audible warning only when passing on the left; it does not require audible warning when passing on the right. The statute was drafted intentionally that way. The committee notes for sec. 346.07 state:

"Because overtaking and passing on the right will be permitted under certain circumstances if proposed sec. 346.08 is adopted, sub. (1) has expressly been limited to cases where a vehicle is being overtaken and passed on the left." 40 W. S. A. 52.

To require a vehicle passing on the right to give an audible warning would be in conflict with sec. 346.07 (3) which requires the vehicle given the warning to give way to the right.

The defendant next alleges error because the trial court failed to give a request instruction on a missing witness.[4]

[3] "346.07 **Overtaking and passing on the left.** The following rules govern the overtaking and passing of vehicles proceeding in the same direction, subject to those limitations, exceptions and special rules stated in ss. 346.08 to 346.11:

"(1) The operator of an overtaking motor vehicle not within a business or residence district shall give audible warning with his warning device before passing or attempting to pass on the left a vehicle proceeding in the same direction. This subsection shall not apply on a highway having 2 or more lanes available for traffic in the same direction, except when reasonably necessary to warn the operator of the vehicle about to be passed.

"(2) The operator of a vehicle overtaking another vehicle proceeding in the same direction shall pass to the left thereof at a safe distance and shall not again drive to the right side of the roadway until safely clear of the overtaken vehicle.

"(3) Except when overtaking and passing on the right is permitted, the operator of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on audible signal and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle."

[4] "You are instructed that if a party fails to call a material witness within his control, or whom it would be more natural for

The defendant contends that the material witnesses were within the plaintiff's control and that it would be natural for him to call the people he was motorcycling with the day of the accident. The defendant called one of them, Mr. Peter Nelson; the plaintiff called Mr. Dentici and the third motorcyclist was not called. However, the plaintiff testified on cross-examination that he knew only one of them before the morning of the accident. He met Mr. Dentici and Mr. Manning only that morning. It also appears that the defendant had deposed all three prior to trial. However, if none of these factors had been present the instruction would have still been properly rejected. In *Thoreson v. Milwaukee & Suburban Transport Corp.* (1972), 56 Wis. 2d 231, 201 N. W. 2d 745, this court held that the absent-witness instruction was erroneously given where it was meant to refer to an unrelated passenger in a bus in an action where the defendant bus company did not call the passenger. The court said it could not be assumed that the passenger was a material witness; he may not have seen the accident. The court said that "material" in this context means capable of supplying information of a strong probative value, not merely cumulative testimony. Further, the court said that a special availability (more natural for one party to call the witness) cannot be presumed unless there is some special relationship like employer-employee or a familial relationship. None of these was present here.

In *Schmiedeck v. Gerard* (1969), 42 Wis. 2d 135, 166 N. W. 2d 136, this court held the instruction not to be required even where the absent witness was the defendant's brother who was a passenger in the car at the time of the accident which gave rise to the suit. And in *Ballard v. Lumbermens Mut. Casualty Co.* (1967), 33 Wis. 2d

that party to call than the opposing party, and the party fails to give a satisfactory explanation for his failure to call the witness, then you may infer that the evidence which he would give would be unfavorable to the party failing to call him."

601, 615, 616, 148 N. W. 2d 65, cited by appellant, this court said:

"A party to a lawsuit does not have the burden, at his peril, of calling every possible witness to a fact, lest his failure to do so will result in an inference against him. The requirements of the absent material witness instruction should be narrowly construed to be applicable only to those cases where the failure to call a witness leads to a reasonable conclusion that the party is unwilling to allow the jury to have the full truth."

Failure to give this requested instruction was not error.

The defendant next contends that it was prejudicial error for the trial court to give an instruction on deviation with respect to the defendant. The trial court instructed the jury that, as required by a safety statute, no one may deviate from a direct course of travel unless and until such movement can be made with reasonable safety. The driver of the deviating vehicle must exercise ordinary care in so deviating. The use of this instruction was objected to by the defendant and was made a ground for the new trial motion. The deviation instruction was given pursuant to sec. 346.13, Stats., which reads in part as follows:

"346.13 **Driving on roadways laned for traffic.** Whenever any roadway has been divided into 2 or more clearly indicated lanes, including those roadways divided into lanes by clearly indicated longitudinal joints, the following rules, in addition to all others consistent with this section, apply:
"(1) The operator of a vehicle shall drive as nearly as practicable entirely within a single lane and shall not deviate from the traffic lane in which he is driving without first ascertaining that such movement can be made with safety to other vehicles approaching from the rear."

The defendant contends there are no statutes specifically dealing with passing lanes such as existed here and that moving from the center westbound lane of the highway

does not constitute a deviation. We disagree. The statute plainly contemplates exactly the situation that this case presented. The statute speaks in terms of deviating from a lane of traffic in which one is driving, which is what occurred here.

The defendant also alleges that the trial court erred in failing to find the plaintiff more negligent as a matter of law than the defendant or, in the alternative, in failing to grant a new trial in the interest of justice.

The defendant moved for a directed verdict at the close of testimony below and the trial court found that issues of fact had been raised, denied the motion, and sent the case to the jury. The motion was renewed and restated in several forms after the verdict and the defendant raises the denial of those postverdict motions here, contending the trial court should have found the plaintiff more negligent than the defendant as a matter of law. In the alternative it is the defendant's claim that the court should have granted a new trial in the interest of justice.

In *Kenwood Equipment, Inc. v. Aetna Ins. Co.* (1970), 48 Wis. 2d 472, 478, 180 N. W. 2d 750, 182 N. W. 2d 241, this court said:

"A jury's finding of negligence and the apportionment thereof will not be set aside when there is any credible evidence which under any reasonable view supports the verdict. . . . This is especially so where the verdict has been approved by the trial court."

The defendant does not seem to contend that there is no credible evidence to support the verdict but rather points out what he regards as various inconsistencies and contradictions in the testimony which would favor the defendant. It is well settled that the weight of testimony and credibility of witnesses are matters for the trier of fact and it is not the function of this court to review such questions. *Valiga v. National Food Co.* (1973), 58

Wis. 2d 232, 206 N. W. 2d 377. There is ample credible evidence to support the jury verdict in this case.

The defendant asks us to reverse this case in the interest of justice. A trial court's ruling upon a motion for a new trial in the interest of justice is highly discretionary and will not be reversed on appeal in the absence of a clear showing of abuse of discretion or an erroneous application of the law. *Chille v. Howell* (1967), 34 Wis. 2d 491, 494, 149 N. W. 2d 600. We find neither in this case.

Defendant also alleges that the trial court committed error in granting a nonsuit to the third-party defendants, Mrs. Klamik and her insurer.

After the plaintiff and defendant had put in their principal cases, Mrs. Klamik and her insurer moved for a nonsuit, dismissing the claim against them, and the trial court granted this motion after hearing some off-the-record argument by the defendant. When the trial judge said that the motion was granted for the nonsuit the record shows that the defendant's counsel said merely "O. K." and there is no objection on the record nor was it raised by the defendant in his motion to amend the transcript. The objections to the granting of the nonsuit was first raised on the motion for a new trial. In *Behning v. Star Fireworks Mfg. Co.* (1973), 57 Wis. 2d 183, 187, 203 N. W. 2d 655, this court said:

"We have uniformly held that failure to make a timely objection precludes a party, as a matter of right, to subsequently raise the point. Ordinarily, it is necessary to make a timely objection, and again to renew the objection on a motion for a new trial, to give the trial judge an opportunity to correct a possible error."

The alleged error then is not properly before this court for review and is deemed waived by failure to make a timely objection. It can be reviewed only under this court's discretion pursuant to sec. 251.09, Stats. Were

we to do so, we would find that the trial court did not commit error in granting Mrs. Klamik's motion for nonsuit. An examination of the evidence is not clearly convincing that the trial court erred in this respect. This court said in *Slam v. Lake Superior T. & T. Ry. Co.* (1913), 152 Wis. 426, 432, 140 N. W. 30:

". . . when the trial judge rules, either on motion for nonsuit, motion for a directed verdict, or motion to set aside the verdict, that there is or is not sufficient evidence upon a given question to take the case to the jury, the trial court has such superior advantages for judging of the weight of the testimony and its relevancy and effect that this court should not disturb the decision merely because, on a doubtful balancing of probabilities, the mind inclines slightly against the decision, but only when the mind is clearly convinced that the conclusion of the trial judge is wrong."

This comment was also quoted favorably in *Trogun v. Fruchtman* (1973), 58 Wis. 2d 569, 585, 207 N. W. 2d 297. In *Liebmann v. Busalacchi* (1971), 52 Wis. 2d 692, 696, 191 N. W. 2d 31, this court quoted with approval from 88 C. J. S., *Trial*, p. 573, sec. 245, on reviewing the grant or denial of a motion for a nonsuit:

" 'In order to avoid a nonsuit the evidence of plaintiff must be sufficient to raise more than a mere surmise or conjecture that the fact is as alleged. Accordingly, if, when plaintiff rests his case, the facts which were incumbent on him to establish appear from the evidence as merely possible, the court may or should grant a judgment of nonsuit; . . .' "

The only evidence that the defendant points to which he claims was credible evidence that the jury could find negligence on Mrs. Klamik's part is the testimony of both the plaintiff and the defendant that the light-colored car between the defendant and Mrs. Klamik made a swift or rapid movement to swerve out and pass around the Klamik vehicle and the defendant's testimony that in so

doing there was no showing of any brake lights by the passing vehicle. This is supposed to show that she did not signal her turn and stopped abruptly. This is mere speculation and makes the defendant's conclusion fall within the realm of the "merely possible." *Liebmann v. Busalacchi, supra.* We find no reversible error in the trial court's granting of Mrs. Klamik's motion for nonsuit.

*By the Court.*—Order and judgment affirmed.