Keric T. DeChant, Plaintiff-Respondent,

v.

Monarch Life Insurance Company, Defendant-Appellant.†

Court of Appeals

*No. 93–2220. Submitted on briefs July 15, 1996.—Decided August 14, 1996.*

(Also reported in 554 N.W.2d 225.)

†Petition to review dismissed.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Eliott R. Good* of *Chorpenning, Good & Mancuso Co., LPA* of Columbus, Ohio, and *Alan Derzon* of *Derzon, Menard & Noonan, S.C.* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Thomas W. St. John* and *S. Todd Farris* of *Friebert, Finerty & St. John, S.C.* of Milwaukee.

Before Anderson, P.J., Brown and Snyder, JJ.

BROWN, J. The jury found that Monarch Life Insurance Company acted in bad faith when it terminated Keric T. DeChant's total disability benefits. It awarded compensatory damages, punitive damages and attorney's fees totaling over $2.5 million. Below we primarily address Monarch's claim that the trial court erred in law when it found that Monarch had "repudiated" the policy and thus it had the discretionary authority to give DeChant a present value, lump-sum distribution of his lifetime disability payments. The court rejected Monarch's argument that DeChant was only entitled to a judgment requiring Monarch to make monthly installments pursuant to the original terms of the policy. We conclude that the trial court correctly applied the law and affirm its choice to grant DeChant a lump-sum award.

We also reject Monarch's ancillary challenges to two of the trial court's rulings on evidence and jury instructions. We affirm the court's decision to give the jury an absent witness instruction after Monarch failed to call one of its field agents. We also affirm the court's ruling which permitted DeChant to describe how the automobile accident that disabled him also caused sig-

nificant injuries to his wife. We agree that the description of his wife's injuries helped reveal the overall severity of the accident.

## BACKGROUND

Monarch's appeal comes to us on remand from the supreme court. We originally certified the case. The court accepted jurisdiction, answered two questions and remanded the three issues that we now decide. *See DeChant v. Monarch Life Ins. Co.*, 200 Wis. 2d 559, 567 n.2, 547 N.W.2d 592, 595 (1996).

Since we face a limited number of issues, we only need to set out a few background facts to completely address the matters left for this court to resolve. A more thorough description of the controversy between DeChant and Monarch is contained in the supreme court's opinion. *See id.* at 564-67, 547 N.W.2d at 593-95.

Dechant purchased his disability policy from Monarch in 1984. The next year, he was severely injured in a car accident and could not return to his original position as a sales agent. While he was able to secure a management position, his annual salary decreased about $50,000.

Because he was physically unable to return to the more lucrative sales position, DeChant applied for total disability benefits under his Monarch policy. Monarch initially accepted his claim. However, in early 1990, after some investigation, Monarch determined that DeChant was only "residually disabled" and decreased the size of the payments. DeChant vigorously disputed this decision.

At trial, the jury concluded that DeChant was indeed totally disabled and that Monarch acted in bad faith when it changed DeChant's status under the pol-

141

icy. The trial court subsequently entered a judgment against Monarch requiring it to give DeChant a discounted, lump-sum payment for the disability benefits he was expected to receive over his lifetime, punitive damages and attorney's fees and related costs.

We will now address seriatim each of Monarch's three appellate arguments. A few further factual details will be set out in these latter sections.

### THE LUMP-SUM AWARD

The trial court interpreted *Caporali v. Washington Nat'l Ins. Co.*, 102 Wis. 2d 669, 307 N.W.2d 218 (1981), to provide a rule that Monarch's bad faith in paying DeChant constituted "repudiation" of the policy as a matter of law. In turn, the trial court found that Monarch's handling of DeChant's claim suggested that DeChant would have future difficulties in securing monthly payments from Monarch. The court thus concluded that the appropriate remedy was to require Monarch to make a present value, lump-sum payment of the future disability payments, instead of a judgment requiring only that Monarch pay DeChant in monthly installments as the policy provided.

Monarch now challenges the trial court's legal conclusions. Monarch first argues that the court erred when it found that *Caporali* authorized present value awards in these situations. Next, and alternatively, Monarch accepts that an insurer's repudiation of a policy entitles the beneficiary to a lump-sum award. However, it argues that whether repudiation took place is a question of fact that the trial court must submit to the jury. Finally, Monarch raises a public policy argument suggesting that lump-sum awards in these instances are "unwarranted and unfair."

DeChant responds that we should uphold the trial court's legal conclusions. DeChant argues that *Caporali* vested the court with the authority to make a discretionary choice of whether Monarch could continue to make monthly installments or should be required to make a lump-sum distribution. He asserts that the "remedy fashioned by the trial court fits squarely within the rationale of *Caporali*."

We agree with DeChant that *Caporali* authorized the trial court in bad faith cases to order that the future payments due under an insurance policy be made in a present value, lump-sum payment instead of the distribution schedule set out in the policy. *See Caporali*, 102 Wis. 2d at 684, 685, 307 N.W.2d at 226. In exercising this discretion, we further conclude that the trial court should carefully examine the relationship between the insured and the insurer to gauge whether the insured should have to deal with the insurer in the future.

■

In reaching this decision, we reject Monarch's claim that *Caporali* did not address the issue of bad faith and was simply a breach of contract case. In *Caporali*, the insured, similar to DeChant, argued that his insurer wrongly classified him as partially disabled when he was totally disabled. *See id.* at 670-71, 307 N.W.2d at 219. Much of the opinion was devoted to whether future benefits, in either monthly installments or a lump sum, could be awarded in these cases, rather than just accrued benefits which had not been paid. *See id.* at 678, 307 N.W.2d at 222-23. Still, the supreme court instructed that a trial court:

> may find, as we hereby authorize it to do, that the defendant's non-compliance with these terms of the judgment will result in award to the plaintiff of the

discounted full amount due *in futuro*, as a present lump sum, or other equitable remedies it may deem appropriate . . . .

*See id.* at 684, 307 N.W.2d at 226. Based on this passage, we conclude that the supreme court has given trial judges broad discretion to fashion remedies ensuring that the successful plaintiff in an insurance bad faith case gets compensation pursuant to the court's determination of what the insured deserves under the disputed policy.

We also reject Monarch's contention that "whether a breach is so serious as to constitute a repudiation is properly a jury question." As we noted above, the trial court read *Caporali* to set out a simple rule that the jury's factual conclusions that the insurer breached a policy and that the breach was done in bad faith equates to a legal conclusion that the insurer repudiated the policy. Contrary to Monarch's claim, the trial court correctly interpreted the law.

■

We observe that the insured in *Caporali* petitioned the supreme court arguing that the court of appeals had erred in its legal conclusion that the insurer had not repudiated the contract and, therefore, the insured was not entitled to any future benefits. *See id.* at 674, 307 N.W.2d at 220-21.[1] While the supreme court reversed the court of appeals' conclusions regarding when future benefits were available in either lump-sum or monthly installments, the supreme court never questioned the court of appeals' legal conclusion

---

[1] The supreme court also faced a question of whether the trial court properly defined the term "accidental bodily injury." *Caporali v. Washington Nat'l Ins. Co.*, 102 Wis. 2d 669, 674, 307 N.W.2d 218, 221 (1981). This part of the supreme court's opinion is not relevant to the issues currently before us.

regarding what was needed to support a finding of repudiation that would, in turn, support a decision to award future benefits. In fact, the supreme court seemingly approved the court of appeals' decision that repudiation is "a bad faith rejection by the insurer of its duty to perform under a contract." *See id.* at 674, 307 N.W.2d at 220 (quoting *Caporali v. Washington Nat'l Ins. Co.*, No. 79-1653, unpublished slip op. at 10 (Wis. Ct. App. Aug. 26, 1980)); *see also* MARK S. RHODES, COUCH ON INSURANCE 2D § 53:320-22 (rev. ed. 1983). We therefore conclude that *Caporali* supports a conclusion that an insurer's bad faith breach of a policy constitutes its repudiation of the policy as a matter of law.

Moreover, because repudiation constitutes a legal principle, Monarch's claim that this question should have been submitted to the jury as a question of fact has no merit. The factual questions are whether the insurer breached the policy and whether its breach was in bad faith. While Monarch cites to *Myrold v. Northern Wis. Coop. Tobacco Pool*, 206 Wis. 244, 249, 239 N.W. 422, 424 (1931), and claims that this case demands that repudiation is a question for the jury, this case holds only that whether a contract was breached is a matter for the jury. Thus, *Myrold* actually accords with our holding that repudiation is a legal conclusion which the trial court reaches after the fact finder makes its determinations about whether there was a breach and whether the breach was in bad faith. *See also Baker v. Northwestern Nat'l Casualty Co.*, 26 Wis. 2d 306, 315-16, 132 N.W.2d 493, 498-99 (1965) (explaining that the issue of bad faith is a matter for the jury), *overruled on other grounds by DeChant v. Monarch Life Ins. Co.*, 200 Wis. 2d 559, 547 N.W.2d 592 (1996).

In addition, we must reject Monarch's contention that permitting the trial court to impose lump-sum awards is bad policy. It complains that the process of estimating a lump-sum equivalent of the insured's total lifetime disability benefits is uncertain and if the insured dies short of his or her life expectancy, the insured may actually be "unjustly enriched." However, we find it peculiar that an insurance company is making an objection to the risks involved in the estimation of a person's life expectancy. This is precisely what insurance companies do every day. *See* LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE 3D § 1:9 (1995). We are confident that Monarch, and all other insurance companies, has adequate access to the necessary statistical data and expertise to safely ensure that the trial court reaches a reasonable, risk-neutral conclusion about the net present value of the insured's expected lifetime benefits.

Finally, Monarch claims unfairness as the imposition of a lump-sum award is punitive. It contends that the *Caporali* court determined that a judgment requiring the insurer to make lifetime monthly installments was a solid "middle ground" which protected the insured's interest in getting his or her benefits and did not unfairly punish insurance companies. *See Caporali*, 102 Wis. 2d at 682, 307 N.W.2d at 224-25. However, the supreme court approved of this middle ground in those cases where the insurer was making a *good faith* objection to payment under the policy. The court noted that it was not speaking to whether a lump-sum award might be warranted in situations where the insurer was acting in bad faith. *Id.* at 685, 307 N.W.2d at 226. In fact, the court suggested that the bad faith scenario would warrant the "punitive action" of impos-

ing a lump-sum award against the insurance company. *See id.*

In conclusion, after the trial court heard all the testimony and observed the demeanor of Monarch's personnel, it reasoned that the company's bad faith treatment of DeChant required that it impose a lump-sum award. The trial court believed that DeChant should not be placed "at the mercy of an insurance company" who had treated him in such a manner. We conclude that the *Caporali* decision authorized the trial court to use its discretion in such a manner and further conclude that the factual record supports the trial court's choice. We affirm its decision to impose the lump-sum award.

### ABSENT WITNESS INSTRUCTION

Monarch complains that the trial court should not have given an absent witness instruction after it did not call Ed Gallet, a field investigator who assessed DeChant's claim. This instruction permits the jury to draw a persuasive and negative inference against a party who fails to call a witness who would otherwise be naturally associated with that party and its case. *See Carr v. Amusement, Inc.*, 47 Wis. 2d 368, 375-76, 177 N.W.2d 388, 392 (1970); *see also* WIS J I—CIVIL 410.[2] Since Gallet had interviewed DeChant and had

---

[2] The absent (or missing) witness instruction provides:

> If a party fails to call a material witness within its control, or whom it would be more natural for that party to call than the opposing party, and the party fails to give a satisfactory explanation for not calling the witness, then you may infer that the evidence which the witness would give would be unfavorable to the party who failed to call the witness.

WIS J I—CIVIL 410.

reported to his supervisors that DeChant was not totally disabled, DeChant successfully argued that Monarch should have called Gallet to support its case. Monarch now raises three arguments against the trial court's decision to give the instruction.

Our review of the trial court's decision is deferential as we only measure if the trial court misused its broad discretion to give jury instructions. *See Young v. Professionals Ins. Co.*, 154 Wis. 2d 742, 746, 454 N.W.2d 24, 26 (Ct. App. 1990). We gauge if the instructions properly state the law and examine the record to determine if the facts support the instructions. *See State v. Turner*, 114 Wis. 2d 544, 551, 339 N.W.2d 134, 138 (Ct. App. 1983). Before we may reverse the court's decision, we must be satisfied that its choice probably misled the jury. *See Young*, 154 Wis. 2d at 746, 454 N.W.2d at 26.

Monarch first notes that Gallet's potential testimony was nonetheless available to DeChant because DeChant had deposed him during the course of discovery. Monarch further describes how DeChant could have read to the jury whatever information he wanted from the deposition transcripts. Completing this argument, Monarch cites *Bode v. Buchman*, 68 Wis. 2d 276, 228 N.W.2d 718 (1975), and proposes that "[t]he availability of Gallet's testimony, of itself, mandated the trial court's denial of [DeChant's] request for the absent-witness instruction."

We disagree. Contrary to Monarch's claim, the *Bode* decision did not establish a bright-line rule against giving this instruction whenever the requesting party had alternative access to the missing witness's testimony. While the party requesting the

instruction in *Bode*, just like DeChant, had previously deposed the missing witness, *see id.* at 287, 228 N.W.2d at 724, the requesting party's earlier access to the missing witness's testimony was not the basis for the conclusion that the instruction was not warranted. Instead, the supreme court held that the instruction was not appropriate because the party who should have allegedly called the absent witness did not have a "special relationship" with the witness. *See id.* at 287, 228 N.W.2d at 724-25. Indeed, the *Bode* decision seems to support the trial court's ruling in this case as the supreme court explained that a typical "special relationship" warranting an absent witness instruction would be that between an employer and its employee. *See id.*

Next, Monarch argues that the absent witness instruction was not appropriate because other witnesses had already given any information that Gallet could have furnished. Monarch says that it did not want to call Gallet because his testimony would have been superfluous and contests the suggestion that it was "unwilling to allow the jury to have the full truth." For example, although Gallet could have described what occurred during his field interview with DeChant, Monarch notes that DeChant took the stand and explained for the jury what took place during this interview.

Nonetheless, the record shows that Gallet could have provided the jury with much more than a description of what he and DeChant discussed during their meeting. In the memorandum that Gallet prepared for his supervisors, he wrote that:

it appears that Mr. DeChant's claim should properly be paid as a residual claim and not totally disabled from performing the duties of his regular occupation.

It's apparent that Mr. DeChant is able to perform some of the duties of his regular occupation.

We believe that DeChant's description of what he and Gallet discussed during this interview did not totally inform the jury of all the information that Gallet had to offer. Gallet gave his supervisors an opinion about DeChant's disability. Thus, Gallet's testimony about how he arrived at this opinion would have contributed to the jury's factfinding. Gallet's testimony would not have been redundant.

Lastly, Monarch complains that the trial court "compounded" its error by not allowing Monarch to specifically inform the jury that DeChant had deposed Gallet but had elected not to read the transcript to the jury. The trial court, however, drew the compromise that Monarch would be permitted to tell the jury that DeChant had the power to depose Gallet and could have taken Gallet's deposition if he wanted the information. We now quote at some length from Monarch's closing arguments to demonstrate how Monarch capitalized on the trial court's ruling:

Why isn't Ed Gallet here? Because his testimony would have been cumulative. He would have told you the same thing Ken Ross told you. And as lawyers, it's not my obligation to bore you. We do enough of that while you're here. But one thing you should remember when you deliberate is that [DeChant], as a matter of right under the legal procedures of this country and of this state, has a right to take the deposition and to compel the testimony of Mr. Gallet. He didn't do that. If there was some-

150

thing in there that was all that strange, all that nefarious, all that shady, please rest assured he would have been here. One way or another. And I know that and now you do because [Dechant] just asked for a lot of money. So if it was significant, trust me, he'd be here.

Although this excerpt plainly shows that the trial court enabled Monarch to explain to the jury why it should not draw a negative inference from its failure to call Gallet, Monarch still maintains that the trial court unfairly limited its argument because the jury was not told that Gallet's "deposition *was in fact taken.*" (Emphasis in original.)

We again disagree. The trial court's compromise was a proper statement of the law and was grounded on a reasonable construction of the record. It is true that the trial court could have correctly enabled Monarch to state that DeChant had taken Gallet's deposition and that DeChant could have called him to the stand or read his deposition aloud for the jury. But our review of the trial court's decisions regarding jury instructions is not so stringent. We only charge it with error when the decision was legally or factually wrong and it probably misled the jury. *See Young*, 154 Wis. 2d at 746, 454 N.W.2d at 26.

We do not believe that the trial court's compromise confused the jury. The jury was told that it could draw a negative inference from Monarch's failure to call its employee to the stand. However, Monarch was permitted to explain why it chose not to call Gallet and how that decision should not play a role in the factfinding process. We conclude that the trial court properly exercised its discretion.

Before trial, Monarch filed a motion in limine to exclude information pertaining to the injuries that DeChant's wife received in the auto accident which caused DeChant's disability. Monarch also asked the court to prevent DeChant from describing any perceptions he might have had about his wife's injuries. In support, Monarch submitted a transcript from a prior, unrelated proceeding where DeChant had testified that the accident was so severe that he immediately thought that his wife had died in the crash.

Monarch argued that the information about DeChant's wife's injuries was not relevant to DeChant's subsequent claim against his disability insurer. Moreover, Monarch expressed concern that this information was unfairly prejudicial because it might lead the jury to wrongly sympathize or develop an emotional link with DeChant.

The trial court, however, denied the motion reasoning that the seriousness of DeChant's wife's injuries bore some relationship to the likely severity of Dechant's injuries. The court summarized that her injuries were "not a totally irrelevant event."

Monarch now reargues its theory that the information about DeChant's wife's injuries should have been excluded because it was not relevant. It has apparently abandoned its earlier charge that this information was unfairly prejudicial. Monarch's claim nonetheless involves the question of whether the trial court misused its discretionary power over the admission and exclusion of evidence. *See Keithley v. Keithley*, 95 Wis. 2d 136, 140, 289 N.W.2d 368, 371 (Ct. App. 1980).

The test for relevancy asks the trial court to determine if the proposed evidence has "any tendency to

make the existence of any fact that is of consequence . . . more probable or less probable than it would be without the evidence." *See* § 904.01, STATS. Here, Monarch claimed that DeChant's injuries were not severe enough to warrant classifying him as fully disabled. The trial court believed, therefore, that DeChant's description of the accident's impact on his wife was relevant because it bolstered his contention that he too was severely injured. We cannot say that DeChant's description of what the accident did to his wife did not aid the fact finder in determining what the accident did to him. We affirm the trial court's ruling that this information was relevant.

*By the Court.*—Judgment affirmed.