Jeffrey M. JANES, Plaintiff–Appellee,

v.

WAL–MART STORES INC., dba Sam's Club, Defendant–Appellant,

and

Gary Dawes, Defendant.

No. 00–55611.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 15, 2001.

Filed Feb. 4, 2002.

Jon A. Shoenberger, Schlecht, Shevlin & Shoenberger, Palm Springs, CA, for the plaintiff-appellee.

Linda Miller Savitt, Christine T. Hoeffner, Dawn Cushman, Ballard, Rosenberg, Golper & Savitt, Universal City, CA, for the defendant-appellant.

Before: B. FLETCHER, D.W. NELSON, and McKEOWN, Circuit Judges.

D.W. NELSON, Circuit Judge.

Wal–Mart appeals the district court judgment following a jury verdict in favor of its ex-employee, Jeffrey Janes, in a wrongful termination suit. Alleging the existence of an implied-in-fact contract with Wal–Mart not to terminate him except for good cause, Janes claims that Wal–Mart breached this contract by firing him after he cooked and ate expired meat taken from Wal–Mart's waste barrel. Specifically, Wal–Mart appeals the district court's denial of its motions for judgment as a matter of law and for a new trial.

Wal–Mart claims that the district court erred by (1) excluding, as unduly prejudicial, evidence that Janes was fired from a previous retail job for stealing; (2) failing to hold that Janes's signed employment application providing for at-will employment could not, as a matter of law, be modified by an implied-in-fact agreement to terminate only for cause; and (3) failing to hold that Wal–Mart had good cause to terminate Janes because of his theft of expired meat. We affirm.

## I. Factual and Procedural Background

On September 12, 1990, Janes completed an application to work as a meat cutter at PACE Membership Warehouse. That application contained an at-will employment provision stating: "I understand that if employed, I have been hired at will [sic] of PACE and that my employment may be

separated at will, at any time; and with or without cause. . . ." Janes's employment as a meat cutter with PACE began a month and a half later and continued until January 1994, when Wal–Mart bought PACE and began operating the store as a Sam's Club. During his employment with PACE, Janes was promoted from a meat cutter to an assistant meat manager.

When Wal–Mart took over the store in January 1994, Janes was given the title of "team leader" and continued to work under the manager of the meat department. In October 1994, Janes was given a raise and promoted from team leader to assistant warehouse manager in charge of the meat department.

Shortly after this promotion, Janes completed an employment application[1] with Wal–Mart. It states:

> I understand that this application is not a contract, offer or promise of employment and that, if hired, I will be able to resign at any time for any reason. Likewise, the company can terminate my employment at any time with or without cause. I further understand that no one other than the President of Wal–Mart Stores, Inc., or Vice President of its People Division has the authority to enter into an employment contract or agreement with me, and that my at-will employment can be changed only by a written agreement signed by the President of Wal–Mart Stores, Inc. I have read, understand, and agree to this statement.

Janes initialed this statement and signed the employment application.

The following events led to Janes's firing (or, the meat of the matter). On about four or five occasions during the summer of 1995, Janes took expired meat from Wal Mart's "bone barrel," a receptacle in which expired meat is regularly deposited for pick-up by a salvage company.[2] On these occasions, Janes and several other employees cooked the meat into carne asada on a Wal–Mart grill and ate it for lunch at the store. After learning of the carne asada lunches, Wal–Mart interviewed Janes about the meat. Wal Mart fired Janes on the day of the interview, citing "violation of company policy" on the termination slip. Though Wal–Mart has no policy against taking expired meat per se, it does have a strict written policy against dishonesty that prohibits taking "anything, large or small." By way of example, the policy states that "eating candy from a broken bag is dishonest."

After his termination, Janes brought this action against Wal–Mart for unlawful discrimination based on a medical condition; wrongful discharge; intentional infliction of emotional distress; negligent infliction of emotional distress; breach of contract; and breach of the implied covenant of good faith and fair dealing.[3] All but the breach of contract and breach of the covenant of good faith and fair dealing claims were dismissed before trial.

The case was tried to a jury over four days in February 2000. Janes argued that Wal–Mart was bound by an implied contract not to terminate him except for good cause, and that Wal–Mart did not have good cause to fire him. He testified that he did not know he was doing anything

---

1. It is unclear why Janes completed an application eleven months after he began working for Wal–Mart. Janes's brief states that Wal–Mart told him it had to "update the files."

2. The parties dispute whether the expired meat had value to Wal–Mart.

3. Janes also brought the first four causes of action against his former supervisor, Gary Dawes. Dawes was dismissed from the suit.

wrong by taking and eating the expired meat.

Janes did not, and does not, assert that his contract was modified by a subsequent written agreement. He also admits that no one ever told him that he would not be demoted, discharged, or disciplined except for good cause. He contends, however, that Wal–Mart's personnel policies and other conduct gave rise to an implied contract not to terminate him except for good cause. He points, in particular, to his promotions and to Wal Mart's policies for disciplining employees, arguing that these evidenced an understanding that Wal–Mart would not fire Janes except with good reason.

The case was submitted to the jury and the jury returned a general verdict for Janes, awarding him $167,000 in damages. Wal–Mart brought motions for judgment as a matter of law and for a new trial. The trial court denied these motions and entered judgment for Janes. Wal–Mart timely appeals, and we have jurisdiction under 28 U.S.C. § 1291.

## II. Standard of Review

We review evidentiary rulings for an abuse of discretion, and an exclusion of evidence should not be reversed absent some prejudice. *Defenders of Wildlife v. Bernal,* 204 F.3d 920, 927–28 (9th Cir. 2000). We review a district court's denial of a motion for judgment as a matter of law *de novo,* and we review for abuse of discretion a district court's ruling on a motion for a new trial. *See Desrosiers v. Flight Int'l of Fla., Inc.,* 156 F.3d 952, 957 (9th Cir.1998).

## III. The district court's exclusion of evidence does not warrant a new trial.

Before trial the court agreed to exclude evidence that Janes, eight years before and at age 17, had been fired from his job at Ralph's grocery store for stealing cigarettes. Janes argued, and the district court judge agreed, that the evidence would be unduly prejudicial. *See* Fed. R.Evid. 403. Wal Mart asserts that this exclusion was in error and that a new trial is therefore required.

Under Rule 403, relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. Here, the judge concluded that "the potential for undue prejudice so substantially outweighs any probative value that [the proferred evidence] may have, that it shouldn't be admitted . . . . [I]t creates a great risk that you've got the jury deciding the case based on character evidence." The judge specifically observed that "in these circumstances a limiting instruction would not adequately protect the plaintiff." We agree and conclude his decision to be reasonable.

First, the proferred evidence was of limited value. Wal–Mart offered the evidence to prove that Janes knew he could be fired for stealing. This fact, however, was not in dispute. Janes testified during trial that he knew that Wal–Mart considered theft to be gross misconduct and that Wal–Mart terminated employees for gross misconduct. This testimony amounted to an admission that Wal–Mart could fire employees for theft. Second, the evidence posed a risk of undue prejudice. Hearing of Janes's former misconduct, a jury may have concluded Janes a person of bad character and viewed his actions and testimony in this case with unwarranted suspicion. The court's exclusion was not an abuse of discretion.

## IV. Wal–Mart failed to conform to the procedural prerequisite for a judgment as a matter of law.

Wal–Mart failed to move for judgment as a matter of law ("JMOL") before submission of the case to the jury. By not

doing so, Wal–Mart failed to comply with the procedural prerequisite for renewing its motion for JMOL after trial. Fed. R.Civ.P. 50(a)-(b). The Ninth Circuit construes this requirement strictly. *Farley Transp. Co. v. Santa Fe Trail Transp. Co.,* 786 F.2d 1342, 1346 (9th Cir.1986) ("the requirement that [a JMOL] motion be made at the close of all the evidence is to be strictly observed"). Therefore, JMOL is not available here.

Wal–Mart argues that its motion for summary judgment and its trial brief satisfy the requirement that it move for JMOL before the close of evidence. But substantial compliance is not enough. This circuit has held that even a motion for JMOL made at the close of plaintiff's evidence is not enough to satisfy Rule 50, because failing to make a motion for JMOL at the close of *all* the evidence may "lull the opposing party into believing that the moving party has abandoned any challenge to the sufficiency of the evidence" and thereby prejudice the opposing party. *Farley,* 786 F.2d at 1346. Wal–Mart asks for a case-specific determination of prejudice here, but *Farley* requires otherwise. *See id.* ("A strict application of Rule 50(b) obviates the necessity for a court to engage in a difficult and subjective case-by-case determination of whether a failure to [present] a motion for directed verdict at the close of all the evidence has resulted in such prejudice to the opposing party under the particular circumstances of that case."); *see also Image Tech. Serv., Inc. v. Eastman Kodak Co.,* 125 F.3d 1195, 1212 (9th Cir.1997) (holding that a litigant's summary judgment motion does not satisfy the requirement for a motion for JMOL at the close of the evidence).

*V. The district court did not abuse its discretion in denying Wal–Mart's motion for a new trial.*

Wal–Mart argues a new trial is warranted because (1) as a matter of law, Janes's signed employment application providing for at-will employment precluded the district court from finding an implied agreement to terminate only for cause; and (2) the evidence presented to the jury was insufficient to find that Wal–Mart did not have good cause to terminate Janes. We find neither argument persuasive.

*1. Wal–Mart waived its contention that, as a matter of law, no implied contract could have arisen.*

■ The existence of Janes's written agreement, Wal–Mart now contends, should have precluded the district court from inquiring into whether an implied contract had arisen from Wal Mart's conduct. It argues that the district court therefore erred by considering the factors used by California courts in establishing an implied contract. *See Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 677–80, 254 Cal.Rptr. 211, 765 P.2d 373 (1988) (setting forth the factors to consider when evaluating whether conduct has given rise to an implied-in-fact contract not to terminate except for good cause). However, Wal–Mart has waived this argument by failing to raise it below.

■ Issues raised for the first time on appeal usually are not considered. *See Whittaker Corp. v. Execuair Corp.,* 953 F.2d 510, 515 (9th Cir.1992). Here, Wal–Mart conducted its case below without specifically arguing that it was wrong for the district court to consider whether an implied contract had arisen. Further, Wal–Mart never objected to the court's consideration of the *Foley* factors in deciding that question. Throughout the proceedings below Wal–Mart itself argued for application of the *Foley* factors. It also requested a jury instruction on the factual circumstances to consider with respect to an implied contract.

Wal–Mart points to two documents as raising this issue below: its motion for judgment as a matter of law and/or a new trial ("JMOL motion") and its trial brief. However, both documents in fact encouraged the district court to consider whether the conduct of the parties had created an implied contract. Wal–Mart's JMOL motion recites the *Foley* factors and argues that "written documents such as employment applications stating employment is 'at will' constitutes[sic] *strong evidence* supporting *the presumption of at-will employment* and that there is no implied-in-fact agreement." (Emphasis added.) This argument treats Janes's written agreement as mere evidence on one side of the fact-intensive implied-contract analysis. It assumes that the background presumption of at-will employment controls, as opposed to an express contract (which would have overcome this statutory presumption). Likewise, Wal–Mart's trial brief repeats that written agreements "provide strong evidence" that Janes was terminable at will. The brief then quotes approvingly one court's procedure of considering such written agreements within the framework of an inquiry into whether conduct gave rise to an implied contract.

■■ These documents failed to place before the district court the issue of whether the existence of Janes's written contract precluded the district court from inquiring into whether an implied contract had arisen. Indeed, Wal–Mart counte-

nanced the implied-in-fact contract framework. Wal–Mart therefore waived this issue.[4] *Whittaker,* 953 F.2d at 515.

### 2. Good Cause

Wal–Mart also argues that a new trial should be granted because, as a matter of law, Wal–Mart had good cause to fire Janes. According to the jury instructions, which have not been challenged, Wal–Mart had good cause to terminate Janes only if it did so for "a fair and honest cause or reason." Wal–Mart points to Janes's taking expired meat as a fair reason.

■■ Ordinarily a jury's verdict is upheld unless it is not supported by substantial evidence. Here, however, Wal–Mart lost its right to challenge the sufficiency of the evidence because it failed to file a procedurally sound Rule 50(b) motion. *Farley,* 786 F.2d at 1345 (when the prerequisite of a timely motion for a directed verdict is not satisfied, "a party cannot question the sufficiency of the evidence ... on appeal"); *Gilchrist v. Jim Slemons Imports, Inc.,* 803 F.2d 1488, 1493 (9th Cir. 1986). Thus, we are limited to reviewing the jury's verdict for plain error, and should reverse only if such plain error would result in a "manifest miscarriage of justice." *United States v. 33.5 Acres of Land,* 789 F.2d 1396, 1400 (9th Cir.1986).

In finding for Janes, the jury implicitly concluded that Wal Mart's reasons for firing Janes were not "fair and honest," after

---

**4.** In our discretion, we may consider an issue not raised below if the issue is purely one of law, does not affect or rely upon the factual record developed by the parties, and will not prejudice the party against whom it is raised. *United States v. Patrin,* 575 F.2d 708, 712 (9th Cir.1978). If, however, Janes "might have tried his case differently either by developing new facts in response to or advancing distinct legal arguments against the issue, [the issue] should not be permitted to be raised for the first time on appeal." *Id.* Throughout the

four-year case, Wal–Mart argued within the framework of the common law factors giving rise to an implied contract without objection. If Janes had known earlier that Wal Mart planned to argue that an implied contract could not have arisen in light of the written one, he might have spent more time developing facts that supported alternative arguments, for example, that Wal–Mart's employment application was not a valid agreement. We therefore decline to exercise our discretion to hear Wal–Mart's argument.

hearing days of testimony by Wal–Mart employees about the firing and considering whether Wal–Mart's explanations seemed genuine. After listening to all the evidence, the district court judge concluded that the jury's verdict was "amply supported by the record." We hold, after reviewing the record, that there was no plain error. And manifest injustice would not result from allowing an employee fired for eating a few pieces of expired meat to keep his jury award.

## VI. CONCLUSION

For the forgoing reasons, we AFFIRM.