Gary GREENBERG, husband,
Plaintiff—Appellee,

v.

PAUL REVERE LIFE INSURANCE
COMPANY, a foreign corporation;
Unumprovident Corp., a foreign cor-
poration fka Provident Companies,
Inc., Defendants—Appellants.

No. 02–16501.

D.C. No. CV–99–00154–SRB.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 9, 2003.

Decided Jan. 12, 2004.

**540**

Kenneth Friedman, Esq., Friedman, Rubin & White, Bremerton, WA, for Plaintiff-Appellee.

William Demlong, Bess & Dysart, Phoenix, AZ, David M. Gossett, Esq., Evan Tager, Mayer, Brown, Rowe & Maw, LLP, Washington, DC, Bess Kunz, Phoenix, AZ, for Defendant-Appellant.

Before PREGERSON, BEAM,* and PAEZ, Circuit Judges.

* The Honorable C. Arlen Beam, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

MEMORANDUM**

Defendants, Paul Revere Life Insurance Company and its corporate affiliates (collectively, "Paul Revere"), appeal from the district court's judgment following a jury verdict in favor of Plaintiff Gary Greenberg's ("Greenberg") claim of bad faith termination of disability benefits. Paul Revere argues that the district court committed various evidentiary errors, misinterpreted the type of damages available under Arizona law, and allowed an impermissible award of punitive damages. We have jurisdiction under 28 U.S.C. § 1291 and affirm the judgment.

*I. The district court's evidentiary rulings.*

Paul Revere contends that the district court committed reversible error when it (a) admitted the testimony of Greenberg's insurance industry expert, (b) excluded Paul Revere's expert testimony about Greenberg's demeanor during a deposition, and (c) excluded Paul Revere's evidence of Greenberg's website postings. We review evidentiary rulings for an abuse of discretion. *Janes v. Wal–Mart Stores, Inc.*, 279 F.3d 883, 886 (9th Cir.2002).

First, the district court did not abuse its discretion in admitting the testimony of Greenberg's industry expert, Donald Kelley. Contrary to Paul Revere's contention, the district court was not required to assess Kelley's testimony against the factors articulated in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)—peer review, publication, error rates, etc.— where it was the "kind of testimony, whose

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

reliability depends heavily on the knowledge and experience of the expert, rather than the methodology or theory behind it." *United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir.2000). Even assuming that the district court erred in allowing Kelley to testify, we cannot reverse absent some showing of prejudice. *See Janes*, 279 F.3d at 886. Here, Paul Revere was not prejudiced because much of Kelley's testimony about the industry standards for the proper handling of disability claims was corroborated by one of Paul Revere's lead claim examiners on the witness stand. Thus, the decision to admit Kelley's testimony ultimately was not prejudicial.

■ Second, the district court properly barred Dr. Steven Pitt from testifying about his impressions of Greenberg's demeanor during a deposition because Paul Revere failed to disclose this additional testimony until the eve of trial.[1] Moreover, Paul Revere is unpersuasive in invoking the "treating physician" exemption because Dr. Pitt's observations at the deposition were clearly outside of a "treatment" context.

■ Third, the district court properly excluded Paul Revere's evidence of Greenberg's website postings as irrelevant. In any event, Paul Revere waived its objection when it failed to later request an evidentiary hearing after earlier being invited to do so by the district court.

None of these evidentiary rulings constitute reversible error.

## II. The availability of "future benefits" under Arizona tort law.

Paul Revere challenges the district court's decision to allow future benefits as part of an award for a bad faith termination of benefits under Arizona law. We review *de novo* a district court's interpretation of state law. *See Paulson v. City of San Diego*, 294 F.3d 1124, 1128 (9th Cir. 2002) (en banc).

■ Although the Arizona Supreme Court has not addressed this issue directly, the district court correctly noted that Arizona law contains a general presumption in favor of future damages. *See Wendelken v. Superior Court*, 137 Ariz. 455, 671 P.2d 896, 899 (1983) ("Arizona allows unlimited recovery for actual damages, expenses for past and prospective medical care, past and prospective pain and suffering, lost earnings, and diminished earning capacity."). Other states have found that an award of future damages is consistent with the general tort requirement of "direct and proximate" causation where there is evidence that (1) the insured will continue to be "entitled" to disability benefits,[2] and (2) the insurer will continue to deny those benefits.[3] Thus, were the Arizona

---

1. Paul Revere's attempt to categorize Dr. Pitt as a layperson runs afoul of a 2000 amendment to Federal Rule of Evidence 701, which "ensures that a party will not evade the expert witness disclosure requirements set forth in Fed.R.Civ.P. 26 and Fed.R.Crim.P. 16 by simply calling an expert witness in the guise of a layperson." Fed.R.Evid. 701 advisory committee's notes.

2. *See, e.g., Egan v. Mutual of Omaha Ins. Co.*, 24 Cal.3d 809, 169 Cal.Rptr. 691, 620 P.2d 141, 149 n. 7 (1979) (en banc) (allowing future policy benefits as part of compensatory damages if the jury could reasonably con-

clude that the policy holder would have been entitled to receive future benefits had the contract not been terminated).

3. *See e.g., DeChant v. Monarch Life Ins. Co.*, 204 Wis.2d 137, 554 N.W.2d 225, 229 (Ct. App.1996) (holding that future benefits are available upon a finding of bad faith because "repudiation is a legal conclusion which the trial court reaches after the fact finder makes its determinations about whether there was a breach and whether the breach was in bad faith").

Supreme Court to address this issue, it would likely hold that future policy benefits may be awarded as compensatory damages.

Here, Greenberg presented considerable evidence that his condition was likely permanent and would qualify him for disability benefits into the future. The record also suggests that the jury believed that Paul Revere had irrevocably strained its relationship with Greenberg and had basically repudiated the contract.[4] In light of all the evidence and the availability of future policy benefits under Arizona law, the district court did not err in allowing the jury to include such benefits as part of its award of compensatory damages.

### III. Availability of punitive damages.

■ We review Paul Revere's challenge to the sufficiency of evidence supporting the punitive damages award under the "substantial evidence" standard. *See Fair Housing of Marin v. Combs*, 285 F.3d 899, 907 (9th Cir.2002). Here, Greenberg proffered ample evidence that Paul Revere acted with the "evil mind" necessary to support a punitive award under Arizona law. *See Linthicum v. Nationwide Life Ins. Co.*, 150 Ariz. 326, 723 P.2d 675, 679–80 (1986).

### IV. Excessiveness of punitive damages.

■ We review *de novo* Paul Revere's claim that the punitive damages award of $2.4 million was unconstitutionally excessive. *In re Exxon Valdez*, 270 F.3d 1215, 1240 (9th Cir.2001). Applying the three factors identified in *BMW v. Gore*, 517 U.S. 559, 116 S.Ct. 1589, 1598–99, 134 L.Ed.2d 809 (1996)—the degree of reprehensibility, the ratio between compensatory and punitive damages, and the availability of civil penalties for comparable misconduct—we find that the punitive award was not excessive.

The evidence of Paul Revere's repeated conduct, which included acts of deceit, towards a financially vulnerable plaintiff was sufficient to allow the jury to find such behavior reprehensible. *See State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 123 S.Ct. 1513, 1521, 155 L.Ed.2d 585 (2003); *BMW*, 116 S.Ct. at 1599, 116 S.Ct. 1589. The 4.4:1 ratio between the compensatory and punitive awards in this case is similar to the 4:1 ratio in *BMW* and well within the "single digit ratio" that marks the outer limits of permissible disparities. *State Farm*, 123 S.Ct. at 1524. Considering that possible civil sanctions for this type of conduct include the suspension or revocation of an insurer's licenses, which in this case could be worth hundreds of millions of dollars to Paul Revere, we conclude that the $2.4 million punitive award was not unconstitutionally excessive.[5]

**AFFIRMED.**

---

4. The jury's decision to award future damages to Greenberg rather than allow Paul Revere to reinstate the policy suggests that the jury believed that Paul Revere would find another way to deny benefits to Greenberg.

5. The district court also found that the punitive award in this case was within the range of other jury verdicts in similar bad faith cases in Arizona.